# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 93-CA-00625-SCT

*JAMES B. WATTS, SR.*

*v.*

*DAVID G. AND DEBORAH S. LAWRENCE*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/05/93 |
| TRIAL JUDGE: | HON. WILLIAM L. STEWART |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | VIRGIL G. GILLESPIE |
| ATTORNEY FOR APPELLEES: | DAVID A. WHEELER |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED ON DIRECT APPEAL; RENDERED ON CROSS-APPEAL - 3/27/97 |
| MOTION FOR REHEARING FILED: | 4/10/97 |
| MANDATE ISSUED: | 12/3/97 |

**BEFORE SULLIVAN, P.J., PITTMAN AND BANKS, JJ.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This appeal and cross appeal arise from an order of the Chancery Court of Harrison County, Mississippi, Second Judicial District, in which the chancellor decreed that the next door neighbors (the Lawrences ) of the Appellant, Watts, are owners of waterfront property and are owners of certain littoral rights appurtenant to their property. In a very well-reasoned opinion, the chancellor designated a line separating the parties's littoral rights and also decreed that the Lawrences could complete construction of a boathouse structure which, according to Watts, encroached on his littoral rights. The chancellor's decision is fair and equitable and we therefore affirm the result in this case.

¶2. On direct appeal Watts asserts that the chancellor erred by (1) finding that the Lawrences had littoral rights; (2) refusing to issue a permanent injunction against the construction of the Lawrences's boathouse; and (3) allowing Harry Joachim to testify contrary to the express dictates of Miss. Code Ann. § 73-34-1, requiring real estate appraisers to be licensed. The Court has held that a chancellor's findings of fact are the equivalent of a jury verdict and that the Supreme Court will reverse a chancellor only when he is unmistakably wrong, clearly erroneous, or applied an erroneous legal standard. *Dew v. Langford*, 666 So. 2d 739, 742 (Miss. 1995).

¶3. On cross-appeal the Lawrences assert as their only assignment of error that the court erred in determining the dividing line between the Appellee's riparian/littoral property.

## DISCUSSION

¶4. Watts and the Lawrences owned adjoining parcels of property facing the Back Bay of Biloxi. Watts purchased his land, Lot 192, in May of 1990. The Lawrences acquired their land, Lot 191, in April of 1984.

¶5. When Watts constructed his home, he simultaneously had the canal behind his house dredged from Biloxi Back Bay (the Bay) to his backyard. There was contradictory evidence as to whether the Bay was accessible before Watts dredged or not. Watts also built a small storage facility and deck on the southwest end of his property. The Lawrences alleged in their counterclaim that the storage facility was in violation of the protective covenants of the subdivision.

¶6. The construction at issue in this case consisted of a pier that the Lawrences built which runs along the east side of the canal starting at the southwest tip of Lot 191. To the west of the pier were about ten posts which in their unfinished state stick up out of the water approximately 25 feet. The 25-foot poles upon completion would constitute a boathouse with motors and hoists to be used to lift the Lawrences boat out of the water. The Lawrences were granted a permit from the Bureau of Marine Resources (BMR), the state agency responsible for regulating wetlands. At trial Chris Snyder, a former BMR agent, testified that the Lawrences's structure appeared to be within the regulations of the permit. Watts testified that he had no objection to the pier which ran along the canal at approximately four feet above the water and a little below the top of the marsh grass. His objection centered around the boathouse.

¶7. Several other witnesses testified at the hearing before the chancellor. Harry Joachim, a real estate broker, testified that the disputed structure would not decrease Watts's property value. Bill Alverson, the Lawrences's house builder, testified that he had observed high tides rising in the Lawrences's yard, and David Lawrence testified that there was always water on his southernmost boundary. Surveyor Lugene Stenum's testimony concerning the tide cycles in relation to the Lawrences's property left some doubt as to whether the Lawrences had littoral rights; however, there was some question about his location of the Lawrences's southern boundary. An appraiser, Sidney Cullifer, stated that construction of the boathouse would negatively affect Watts's property by diminishing its value some 20 to 30 per cent; however, this testimony was speculative as he offered no before and after calculations.

## LAW

### I. DIRECT APPEAL

### A. Littoral Rights

¶8. Watts's argument is simply that the Lawrences do not own a piece of property which enjoys littoral rights. He contends that the Plat of Northaven Subdivision shows that the actual lines of Lot 191 do not touch any water or the canal, as shown on the plat and on the various surveys made of the property. Nor did the deed of conveyance, which described the property only by subdivision lot,

mention littoral rights. Watts charges that if any littoral rights can be accorded Lot 191, it can only be through the express provisions of Miss. Code Ann. § 49-15-9. Under that section, certain rights are given to the littoral owner up to 750 yards from shore, measuring from the average low water mark. Watts argues that this section specifically establishes one's littoral rights at "the average low water mark," and because no water touches the Lawrences's property at low water, the Lawrences do not have littoral rights. In pertinent part, that statute states:

> The sole right of planting . . . and erecting bathhouses and other structures in front of any land bordering on the Gulf of Mexico or Mississippi Sound or waters tributary thereto belongs to the riparian owner and extends not more than seven hundred fifty (750) yards from the shore, measuring from the average low water mark . . .

Miss. Code Ann. § 49-15-9 (1972).

¶9. The distinction between littoral and riparian rights is germane to this opinion. "Littoral rights" are defined as "[r]ights concerning properties abutting an ocean, sea or lake rather than a river or stream (riparian). Littoral rights are usually concerned with the use and enjoyment of the shore." *See **Black's Law Dictionary***, 934 (6th ed. 1990). Because the properties in question front on the Back Bay of Biloxi, which is a tributary and major extension of the Mississippi Sound, this case deals with littoral rights as opposed to riparian rights.

¶10. That being said, we proceed to Watts's argument. Watts's interpretation of § 49-15-9 is misguided. This statute actually addresses the distance a property owner's littoral rights reach, not who has littoral rights.

¶11. The law as to ownership to the water is controlled by ***Cinque Bambini Partnership v. State***, 491 So. 2d 508 (Miss. 1986). ***Cinque Bambini*** held that the state is the owner in trust, for the benefit of all citizens of this state, of all lands below the mean high tide line in areas where private property borders on navigable waters. *Id*. at 516-17. The law is clear that the state owns all land below the mean high watermark in trust and, therefore, the state is the owner of all lands between the mean high watermark and low watermark. If we were to accept Watts's argument -- that littoral rights start at the low watermark -- we would be overruling ***Cinque Bambini*** and several cases prior to that. The Lawrences own land that abuts the high watermark; so, they may exercise the littoral rights associated with that property below that watermark.

### B. Boathouse Construction

¶12. Littoral rights, though, are not property rights per se; they are merely licenses or privileges. ***Mississippi State Highway Comm'n v. Gilich***, 609 So. 2d 367, 375 (Miss. 1992). Once the Lawrences have established their littoral rights, as they have here, the Legislature has stated that the BMR shall administrate any activity associated with such rights. Miss. Code Ann. § 49-15-11 (1972). In other words, the construction of the boathouse by the Lawrences was subject only to regulation by BMR. The Lawrences received a permit to build their boathouse in accordance to certain specifications and adhered to it. The chancellor did not err by refusing to grant a permanent injunction nor did he err in his finding that the Lawrences had littoral rights.

### C. Joachim's Testimony

¶13. Watts further argues that the chancellor erred by failing to exclude the testimony of Joachim. Joachim had been a real estate broker for 30 years and had done some 11,000 appraisals during that time. Joachim testified that the structure in question would not decrease the value of Watts's property. During cross-examination, Joachim testified that he retired from appraising property in December of 1992. Upon hearing this, Watts's attorney objected to Joachim's testimony, because the Code provides that "it shall be unlawful for anyone to engage in real estate appraisal activity in this State without obtaining one of the four real estate appraiser licenses." Miss. Code Ann. § 3-34-5 (1972).

¶14. Our Rules of Evidence require only that an expert witness be qualified by knowledge, skill, experience, training, or education. Miss. R. Evid. 702. The record is replete with evidence of Joachim's experience and knowledge in this area. He is a qualified expert under M.R.E. 702. The trial court did not err in allowing his testimony.

### D. Subdivision Covenants

¶15. Watts also argues that the Lawrences violated the protective covenants of the subdivision. The evidence indicates that the boathouse was more than fifteen feet from the rear lot line of the Lawrences's property, as required by the covenants. Nothing in the protective covenants clearly prohibited the construction of boathouses on the lots abutting water. In fact the photographs submitted as evidence reflected that many other houses in the subdivision have boathouses or piers. The protective covenants were not violated by the Lawrences's construction.

### II. CROSS-APPEAL

¶**16.** The only issued raised by the Lawrences on cross-appeal is that the lower court erred in determining a dividing line between the property of the Appellee and the property of the Appellants. As discussed in Issue B., page 5, the BMR has Legislative-delegated administrative authority over any activity associated with littoral rights. Based on the BMR's authority, it was not necessary for the chancellor to draw a line of demarcation in this case. We accordingly strike that division.

### CONCLUSION

¶17. Owners of land whose property abut the water at the high watermark are entitled to enjoy their littoral rights. However, these rights are administered through the agency so designated by statute. That agency's procedures and requirements must be followed. The Lawrences's property touched water at the high watermark, and they adhered to the regulations of the BMR, which regulates these rights per se. The chancellor did not apply an erroneous legal standard in this case. His ruling is affirmed in accordance with this opinion, striking the line of demarcation.

¶18. **AFFIRMED ON DIRECT APPEAL; RENDERED ON CROSS-APPEAL**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**