# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-02025-SCT

*COLUMBIA LAND DEVELOPMENT, LLC, COLUMBIA MARKETPLACE, LTD AND COLUMBIA GOLF RESORT & CASINO CORPORATION*

*v.*

*THE SECRETARY OF STATE OF THE STATE OF MISSISSIPPI, ERIC CLARK*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/14/2001 |
| TRIAL JUDGE: | HON. THOMAS WRIGHT TEEL |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | PAUL J. DELCAMBRE, JR. |
| | BEN HARRY STONE |
| | SCOTT E. ANDRESS |
| | PATRICIA ANN BAILEY |
| ATTORNEYS FOR APPELLEE: | DANIEL L. SINGLETARY |
| | DAVID M. McMULLAN, JR. |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 03/25/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, P.J., COBB AND CARLSON, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.   In today's appeal, this Court is requested to determine the authority of the Secretary of State under the Public Trust Tidelands Act to finally approve or disapprove a proposed lease of this State's public tidelands. The Mississippi Gaming Commission had previously conditionally approved the site for gaming, but the Secretary of State disapproved the proposed lease. The property owners challenged that

disapproval by filing a Petition for Declaratory Action and Mandatory Injunction in the Chancery Court of the First Judicial District of Harrison County. The chancellor denied the petition and the subsequent Motion to Reconsider, For a New Trial, or Entry of Judgment as a Matter of Law. For the following reasons, this Court affirms the decision of the chancellor.

## FACTS AND PROCEEDINGS IN THE
## AGENCIES AND CHANCERY COURT

¶2.     Two corporate entities, Columbia Land Development, LLC ("Columbia LLC") and Columbia Marketplace, LTD ("Columbia LTD")[1] collectively own approximately four hundred acres of real property fronting the Bay of St. Louis in the First Judicial District of Harrison County, Mississippi. The property is leased to Columbia Golf Resort & Casino Corporation ("Columbia GR&C") for purposes of developing a resort, including a golf course, hotel, and gaming vessel.

¶3.     The property is located on the tip of a peninsula which is bordered by the Wolf River to the north, the Bayou Portage to the south, and the Bay of St. Louis to the west. The peninsula lies north of the City of Pass Christian and south of the community of De Lisle. Specifically, the location of the proposed casino gaming vessel is in the waters of the Bay of Bayou Portage at the northeastern end of the Henderson Avenue (Portage) bridge. The waters upon which the casino vessel would sit are also commonly referred to as "Bay of Portage" or "Bayou Portage." The tidelands where the proposed casino gaming vessel would be located carry a "commercial" designation under the Coastal Wetlands Use Plan. Although the vessel location, being in an unincorporated area, carries no municipal zoning designation, the land immediately

---

[1]The appellants are Columbia Land Development, LLC, Columbia Marketplace, LTD, and Columbia Golf Resort & Casino Corporation. They will quite often throughout this opinion be referred to collectively as simply "Columbia."

south of the site is zoned commercial by the City of Pass Christian. Permits have previously been granted by the Mississippi Department of Marine Resources and the United States Army Corps of Engineers for the construction of a marina on the site.

¶4. On March 22, 1996, Columbia LLC filed an "Application for Standard Lease of Public Trust Tidelands" with the Secretary of State for the purpose of construction of a marina and a gaming vessel. The Secretary of State acknowledged receipt of the application, which was practically identical to that submitted by the previous owner. The Secretary of State had issued a permit to the previous owner for a marina on the site, however, that project was never completed. The previous owner had indicated that the marina would be constructed on Bayou Portage, but Columbia's application indicated the site was on the Bay of St. Louis. Noting the discrepancy, the Secretary of State required a ruling from the Mississippi Gaming Commission that the site was on the Bay of St. Louis and not on a river or bayou leading into the Bay.

¶5. Columbia GR&C filed an application with the Mississippi Gaming Commission for a license to conduct gaming. The Gaming Commission conducted a preliminary site assessment and held a public hearing to determine the suitability of the site. The Gaming Commission unanimously voted to grant site approval, and there was no challenge to the Gaming Commission's action.

¶6. Despite the approval from the Gaming Commission, by letter dated September 18, 1996, the Secretary of State denied the lease and stated that the site did not satisfy the geographical requirements of the Mississippi Gaming Control Act of 1990, Miss. Code Ann. §§ 75-76-1 *et seq*. (Rev. 2000). That same letter notified Columbia LLC that if a marina were built on the site rather than a casino gaming

development, the lease application would be processed. Several meetings were held between representatives of the corporate entities and officials from the Secretary of State's Office, including Secretary of State Eric Clark, in an effort to "work it out" but to no avail. The Columbia entities contend that they were informed the main reason for denial of the lease application was Dr. Clark's personal conviction against gaming. However, Dr. Clark testified at the hearing before the chancellor (and the chancellor so found), that there were additional reasons for the denial other than the location, including:

> (1) the rural/residential nature of the area, its remoteness effecting [sic] the viability of a casino, the lack of infrastructure, and its incompatibility with a casino; (2) the added impairment of the pollution in Bay St. Louis; (3) negative environmental effect on the tidelands and uplands due to casino development; the relatively pristine nature of the site and surroundings; and (5) the costs to the community in taxes and infrastructure costs. Additionally, the Secretary of State stated that there was no casino operator/developer with sufficient financial resources committed to the project and the effects of a failed casino were harmful to the environment.

(footnotes omitted).

¶7.     Columbia LLC filed a Petition for Declaratory Judgment and Mandatory Injunction in the First Judicial District of Harrison County Chancery Court on January 17, 1997. The Secretary of State filed a Motion to Dismiss on the grounds of lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. The Secretary of State's motion was denied. After discovery, a Renewed Motion to Dismiss, or in the alternative, for Judgment on the Pleadings was filed by the Secretary of State on May 21, 1999. That motion was also denied.

¶8.     A trial was held before Chancellor Thomas W. Teel on November 8, 2001, and by Order entered on November 14, 2001, the chancellor denied the requested relief and dismissed the petition for declaratory and injunctive relief. The Motion to Reconsider, For a New Trial, or for Entry of Judgment

4

as a Matter of Law was filed on November 26, 2001. However, Chancellor Teel left office on February 21, 2002, and an Order of Recusal was subsequently signed by all four chancellors of the Eighth Chancery Court District and entered on May 20, 2002. Thus, by Order of this Court, Honorable Denise S. Owens was appointed as Special Judge. A hearing was held before Chancellor Owens on October 16, 2002 and, by Order dated November 20, 2002, the previously filed motion for reconsideration was denied. Columbia has thus perfected this appeal.

¶9.    This Court has accepted an amici curiae brief filed by Imperial Palace of Mississippi, Inc. and Treasure Bay Corp. These friends of the Court are Mississippi corporations holding littoral rights and State tidelands leases in Harrison County and are engaged in the business of dockside gaming.

## ISSUES AS PRESENTED BY THE PARTIES

¶10.    In its brief, Columbia states the issues as follows: Whether the State of Mississippi is the trustee of the public trust tidelands and the Secretary of State is only the trustee of the fund generated by the land held in trust; whether the Secretary of State when negotiating a lease of tidelands property has veto power over other state agencies who have been granted authority by the Legislature to evaluate and make determinations regarding the legality and suitability of proposed uses of tidelands property; whether the Secretary of State abused his discretion in refusing to negotiate a tidelands lease with Columbia after the decision of the Mississippi Gaming Commission that the planned site was legal and suitable for gaming resort purposes; and, whether Miss. Code Ann. § 29-1-107(2) (Rev. 2000) of the Tidelands Act, as construed by the chancellor, is unconstitutionally vague and violates Columbia's fourteenth amendment right of due process.

5

¶11. On the other hand, in his brief before this Court, the Secretary of State states the issues as follows: Whether the Mississippi legislature, in the Tidelands Act, delegated to the Secretary of State the role of management of the tidelands as a trustee, as held by this Court in *Wiesenberg*;[2] whether the Secretary of State has been delegated broad discretion to manage the public trust tidelands; whether the Secretary of State abused his discretion in declining to enter into a tidelands lease with Columbia for use of public trust tidelands for casino gaming; whether the stare decisis effect of *Wiesenberg* precludes consideration of the issue of the constitutionality of the Tidelands Act; and, whether the chancellor correctly held that Columbia's littoral rights were simply non-exclusive privileges entitling the upland owner with access to, and limited use of, the adjacent public trust tidelands.

¶12. Finally, Imperial Palace and Treasure Bay, as amici curiae, present several questions to this Court for consideration: (1) Who is the trustee of the public trust tidelands? (2) What type of trust is the Tidelands Trust? (3) What are littoral rights?

¶13. With all of this having been said, we determine that the crucial issue before us may be stated and discussed as follows:

**WHETHER THE SECRETARY OF STATE HAS THE FINAL DECISION-MAKING AUTHORITY CONCERNING A PROPOSED PUBLIC TRUST TIDELANDS LEASE.**

**STANDARD OF REVIEW**

¶14. In reviewing an opinion issued after a trial on the merits held before a chancellor, this Court's standard of review is well established. The findings of the chancellor will not be overturned by this Court

---

[2]*Secretary of State v. Wiesenberg*, 633 So.2d 983, 987-89 (Miss. 1994).

6

unless they are manifestly wrong, not supported by substantial credible evidence, or an erroneous legal standard was applied. ***Vaughn v. Vaughn***, 798 So.2d 431, 433 (¶ 9) (Miss. 2001); ***Tucker v. Prisock***, 791 So.2d 190, 192 (¶ 10) (Miss. 2001). For questions of law, a de novo standard of review is applied. ***Id.***

**ANALYSIS**

### I.  Public Tidelands Trust

¶15.   At the heart of this case is the question of who has authority to act as the trustee of the public trust tidelands. Columbia and the amici assert that the responsibility falls upon the Legislature and is non-delegable. The Secretary of State asserts that he is the trustee for all public lands in Mississippi, including the public trust tidelands, under Miss. Code Ann. § 7-11-11 (Rev. 2002) and §§ 29-1-1 *et seq.* (Rev. 2000). We agree with the Secretary of State.

¶16.   The title to the public trust tidelands was vested in this State at the inception of statehood and such title is held in trust by the State of Mississippi for the benefit of the public. Miss. Code. Ann. § 29-15-5 (Rev. 2000). This Court has long recognized that the tidelands are a part of the public trust. ***State ex rel. Rice v. Stewart***, 184 Miss. 202, 184 So. 44 (1938); ***Rouse v. Saucier's Heirs***, 166 Miss. 704, 146 So. 291 (1933). For a thorough review of the establishment and history of the Public Tidelands Trust, see ***Secretary of State v. Wiesenberg***, 633 So.2d 983, 987-89 (Miss. 1994).

¶17.   The public trust tidelands are unique and ever changing with the ebb and flow of the tide. The trust encompasses this unique corpus which is to be protected for the use and possession of the general public and the upland owners. The public trust tidelands are characterized as follows:

7

Tidelands and submerged lands are held by the state in trust for use of all the people, and are so held in their character as the beds and shores of the sea and its tidally affected arms and tributaries for the purposes defined by common law and statutory law. Littoral and riparian property owners have common law and statutory rights under the Coastal Wetlands Protection Law which extend into the waters and beyond the low tide line, and the state's responsibilities as trustee extends to such owners as well as to the other members of the public.

Miss. Code Ann. § 29-15-5 (Rev. 2000). The terms "riparian" and "littoral" are occasionally used interchangeably; however, there is a distinction between the two:

"Riparian" is defined as

Belonging or relating to the bank of a river or stream; of or on the bank. Land lying beyond the natural watershed of a stream is not "riparian."

The term is sometimes used as relating to the shore of the sea or other tidal water, or of a lake or other considerable body of water not having the character of a watercourse. But this is not accurate. The proper word to be employed in such connections is "littoral."

Black's Law Dictionary 1327 (6th ed.1990)(emphasis added). "Littoral rights" are those "[r]ights concerning properties abutting an ocean, sea or lake rather than a river or stream (riparian). Littoral rights are usually concerned with the use and enjoyment of the shore." *Watts v. Lawrence*, 703 So.2d 236, 238 (Miss.1997) (quoting Black's Law Dictionary 934).

*Stewart v. Hoover*, 815 So.2d 1157, 1163 (¶ 19) (Miss. 2002). In the boundary line dispute case of *Cinque Bambini Partnership v. State*, 491 So.2d 508 (Miss. 1986), this Court noted a distinction of property rights: "while the lands below tidewaters may not be alienated except for high public purposes and generally only with the consent of the legislature, lands below navigable freshwaters are susceptible of wholly private ownership ." *Id.* at 517 & n. 5.

8

¶18.    "Littoral rights, though, are not property rights per se; they are merely licenses or privileges." *Watts v. Lawrence*, 703 So.2d 236, 238 (Miss. 1997) (citing *Miss. State Highway Comm'n v. Gilich*, 609 So.2d 367, 375 (Miss. 1992)).  In *Watts*, adjoining land owner brought suit challenging his neighbor's right to construct a boathouse.  The construction was approved by the Bureau of Marine Resources.  We concluded that: "Owners of land whose property abut the water at the high watermark are entitled to enjoy their littoral rights. However, these rights are administered through the agency so designated by statute. That agency's procedures and requirements must be followed." 703 So.2d at 239.

¶19.    The public policy of the State of Mississippi regarding that trust has been stated by the Legislature as the:

> [p]reservation of the natural state of the public trust tidelands and their ecosystems and to prevent the despoliation and destruction of them, except where a specific alternation of specific public trust tidelands would serve a higher public interest in compliance with the public purposes of the public trust in which such tidelands are held.

Miss. Code Ann. § 29-15-3 (Rev. 2000).  These public purposes have been found to include:

> navigation and transportation, *Rouse v. Saucier's Heirs*, 166 Miss. 704, 146 So. 291 (1933); *Martin v. O'Brien*, 34 Miss. 21 (1857); commerce, *Rouse v. Saucier's Heirs*, 166 Miss. 704, 146 So. 291 (1933); fishing, *State ex rel. Rice v. Stewart*, 184 Miss. 202, 231, 184 So. 44, 50 (1938); bathing, swimming and other recreational activities, *Treuting v. Bridge and Park Commission of City of Biloxi*, 199 So.2d 627, 632-33 (Miss. 1967); development of mineral resources, *Treuting v. Bridge and Park Commission of City of Biloxi*, 199 So.2d 627, 633 (Miss. 1967); environmental protection and preservation, Miss. Code. Ann. Secs. 49-27-3 and -5(a) (Supp. 1985); the enhancement of aquatic, avarian and marine life, sea agriculture and doubt others. *See Marks v. Whitney*, 6 Cal.3d 251, 491 P.2d 374, 98 Cal.Rptr. 790 (1971).  Suffice it to say that the purposes of the trust have evolved with the needs and sensitivities of the people–and the capacity of trust properties through proper stewardship to serve those needs.

*Cinque Bambini P'ship v. State*, 491 So.2d at 513. The rules of the Secretary of State reflect the same public purposes. *See* Rules of Secretary of State for the Administration, Control, and Leasing of Public Trust Tidelands, Rules 1(B) & 4(B)(1) & (2).

¶20.     Clearly, the littoral property at issue in the case sub judice is subject to the public tidelands trust and the associated rules and regulations. The State of Mississippi is the trustee of the public trust tidelands. "The State, as trustee, may not divest itself of its duties. However, the state, by statute, may vest in others the authority to do acts which the trustee cannot practicably be expected to perform." *Wiesenberg*, 633 So.2d at 997 (citing *Turney v. Marion County Bd. of Educ.*, 481 So.2d 770, 777 (Miss. 1985)). The Legislature has done just that.

> The Secretary of State shall have charge of the swamp and the overflowed lands and indemnity lands in lieu thereof, the internal improvement lands, the lands forfeited to the state for nonpayment of taxes after the time allowed by law for redemption shall have expired, and of all other public lands belonging to or under the control of the state. The regulation, sale and disposition of all such lands shall be made through the secretary of state's office.
>
> The secretary of state shall sign all conveyances and leases of any and all state-owned lands and shall record same in a book kept in his office for such purposes.

Miss. Code Ann. § 7-11-11 (Rev. 2002).

¶21.     This Court has found that: "The Secretary of State is a constitutionally created office and is statutorily responsible for the public trust lands." *Wiesenberg*, 633 So.2d at 997. In *Wiesenberg*, we held that the delegation of the management of the tidelands to the Secretary of State was constitutional. Thus, notwithstanding Columbia's contentions to the contrary, the Secretary of State is not merely an administrator. The Secretary of State, subject to approval by the Governor, has been granted via legislative

enactment the discretion to enter into leases involving the public tideland property. Miss. Code Ann. § 29-1-107(2) (Rev. 2000) states:

> The Secretary of State, with the approval of the Governor, *may* rent or lease surface lands, tidelands or submerged lands owned or controlled by the State of Mississippi lying in or adjacent to Mississippi Sound or Gulf of Mexico or streams emptying therein, for a period not exceeding forty (40) years for rent payable to the state annually. The lessee under such agreement may construct such necessary items from marking channels, docking, wharfing, mooring or fleeting vessels which shall be in aid of navigation and not obstructions thereto.

(emphasis added). This statute unequivocally affords the Secretary of State the discretion to enter into a lease of the public tidelands.

¶22. For the foregoing reasons, the Secretary of State has the responsibility of preserving the public trust tidelands for the people of the State of Mississippi.

## II. The Secretary of State's Role

¶23. Columbia contends that once the Mississippi Gaming Commission approved the site for gaming, the Secretary of State was required to enter into a lease of the public trust tidelands. We disagree. When the landowner seeks to construct a gaming vessel, there are several agencies which have a role in the approval process, and a landowner is required to obtain the requisite permits or approvals from each agency or office. First of all, a landowner is required to obtain a lease of the public trust tidelands adjacent to his littoral property. To do so, the landowner must obtain the approval of the Secretary (with the approval of the Governor). The remaining prerequisites for approval of the establishment of a gaming vessel are not at issue in today's appeal and, therefore, will not be discussed.

11

¶24.    The crucial issue before us today is whether the Secretary of State *must* approve a lease of the public tidelands upon the approval by the other state agencies which have been granted legislative authority to evaluate and make determinations regarding the legality and suitability of proposed uses of the public tidelands. Although the Secretary of State has acknowledged that the Mississippi Gaming Commission has the exclusive jurisdiction in determining the legality of the site for gaming purposes pursuant to the gaming regulations[3], the answer to the question at hand does not depend on any decision by the Gaming Commission.    The chancellor correctly found that "Mississippi legislation allows the success of any proposed gaming site to be dependent on the approval of numerous state departments and agencies.  Each effectively has a veto power."

¶25.    The chancellor further reasoned that "[m]ost of the agencies have limited scopes of inquiry (such as [Commission on Marine Resources] and [Department of Environmental Quality]); however, both the MGC and the Secretary of State have broader scopes."  Indeed, the role of the Secretary of State is that of a trustee.

> The rule is "that trustees are bound in the management of all the matters of the trust to act in good faith and employ such vigilance, sagacity, diligence and prudence as in general prudent [persons] of discretion and intelligence in like matters employ in their own affairs. The law does not hold a trustee, acting in accord with such rule, responsible for errors of judgment." "All that equity requires from trustees is common skill, common prudence, and common caution." [Footnotes omitted]

---

[3]"The Mississippi Gaming Control Act has vested the Commission with the authority "to determine the locations of casinos which wish to build in the Gulf Coast area." ***Miss. Casino Operators Ass'n v. Miss. Gaming Comm'n***, 654 So.2d 892, 894 (Miss.  1995) (citing Miss. Code Ann. § 75-76-7).

*Turney*, 481 So.2d at 777-78 (citing Bogert, Law of Trusts, § 93 (5th ed.1973); see also, Scott, Scott on Trusts, § 174 (3rd ed. 1967)). Although *Turney* involved sixteenth section lands, the same duty applies to the public trust tidelands. Thus, this Court finds that it is the Secretary of State's constitutional duty to exercise discretion in a manner consistent with the public policy as stated in the Tidelands Act, Miss. Code Ann. § 29-15-3 (Rev. 2000).

### III. The Secretary's Decision to Deny the Tidelands Lease

¶26. Columbia argues that by denying the lease, the Secretary of State usurped the authority of the Mississippi Gaming Commission's determination that the site was legally suitable for a casino. The Secretary of State restates the question before this Court as to whether the Secretary of State was obligated to lease the tidelands to Columbia simply because the Mississippi Gaming Commission had granted preliminary site approval. As previously discussed, the proper question is whether the Secretary of State must enter into a lease with Columbia. As likewise previously discussed, the Secretary of State has been given by statute considerable discretion in determining whether to enter into a lease of the public trust tidelands. ¶27. There is no statutory or constitutional provision or common law pronouncement directing the Secretary of State to consider any specific criteria in making a determination as to whether to lease the public trust tidelands. The only guidance provided by the Legislature is found in Miss. Code Ann. § 29-1-107(2) (Rev. 2000) which simply provides that the Secretary of State **may** lease or rent the tidelands with the approval of the Governor. However, Miss. Code Ann. § 29-15-3 (1) (Rev. 2000) states:

> It is declared to be the public policy of this state to favor the preservation of the natural state of the public trust tidelands and their ecosystems and to prevent the despoliation and

13

destruction of them, except where specific alteration of specific public trust tidelands would serve a higher public interest in compliance with the public purposes of the public trust in which such tidelands are held.

Absent a higher public interest, the natural state of the public trust tidelands is paramount. Any direction as to specific factors which the Secretary of State should consider in determining whether to enter into a public trust tidelands lease must come from the Legislature, not this Court.

¶28.    Columbia argued before the trial court, as they do before this Court, that the sole basis for the denial was stated in the letter of September 18, 1996, from Margaret Anne Bretz, Senior Attorney of the Secretary of State's Office, which stated inter alia that: "In [the Secretary of State's] judgment, this site does not conform with legislative intent and is not on the Bay of St. Louis, but on a tributary thereto" and that any "post-hoc allegations" should be discounted. The chancellor found that "[s]uch a ruling would deny the reality of the actual process: the various attorneys had discussions; Columbia principal John C. Ellis, Jr., and Secretary Clark had a personal meeting in Jackson to address the various concerns of the Secretary of State in denying a lease." The chancellor's order found that the Secretary of State testified to the following additional reasons for the denial of the lease:

> (1) the rural/residential nature of the area, its remoteness effecting [sic] the viability of a casino, the lack of infrastructure, and its incompatibility with a casino; (2) the added impairment of the pollution in Bay St. Louis; (3) negative environmental effect on the tidelands and uplands due to casino development; the relatively pristine nature of the site and surroundings; and (5) the costs to the community in taxes and infrastructure costs. Additionally, the Secretary of State stated that there was no casino operator/developer with sufficient financial resources committed to the project and the effects of a failed casino were harmful to the environment.

(footnotes omitted).

14

¶29. Columbia has placed the Secretary of State's concerns into three categories: environmental, economical, and opposition from constituents. Columbia asserts that each of these reasons for denial of the public trust tidelands lease fall within the purview of the various agencies which have been given statutory authority to make these determinations. However, as already stated, the Secretary's role as trustee is much broader in scope than that of these various agencies regarding the public trust tidelands. As stated in *Turney*:

> The rule is "that trustees are bound in the management of all the matters of the trust to act in good faith and employ such vigilance, sagacity, diligence and prudence as in general prudent [persons] of discretion and intelligence in like matters employ in their own affairs. The law does not hold a trustee, acting in accord with such rule, responsible for errors of judgment." "All that equity requires from trustees is common skill, common prudence, and common caution."

*Turney*, 481 So.2d at 777-78 (footnotes omitted).

¶30. Again, the question is whether the Secretary of State *must* lease the land to Columbia. The answer is no. In sum, the chancellor found:

> based on the totality of what this Court heard, the Secretary's actions were not arbitrary ("not done according to reason or judgment") or capricious ("a lack of understanding or a disregard for surrounding facts and settled controlling principles"). This decision was a judgment call, a discretionary act, a decision based on the Secretary's understanding of his trusteeship.

This Court agrees. Columbia has failed to show that the decision of the chancellor is manifestly wrong, not supported by substantial credible evidence, or that an erroneous legal standard was applied.

## IV.    The Constitutionality of the Public Trust Tidelands Act

¶31. The question of the constitutionality of the Public Trust Tidelands Act was first raised by Columbia in their Motion to Reconsider, For a New Trial or for Entry of Judgment For the Plaintiffs as a Matter of

15

Law. As the basis for this challenge, Columbia alleges that the statute is unconstitutionally vague. In reliance of their argument, Columbia references ¶ 39 of the chancellor's order, which states:

> Certainly, Columbia should be upset. There are no set rules to follow. A citizen is left without a clear indication of the process, of the requirements, and of how to proceed. There is no procedure for an internal hearing and no clear avenue of appeal. Unfortunately, this is the bare-bones system set forth by the legislation. Certain, the Secretary of State could establish rules which would alleviate these problems, but nothing requires him to do so.

¶32. Columbia argues that Miss. Code Ann. § 29-1-107(2) (Rev. 2000) is unconstitutional because it is vague and that an ordinary person of common intelligence upon reading the statute cannot understand what actions are permissible. The standard for determining whether a statute is constitutional or not is well-established:

> "Legislative acts are ... cloaked with a presumption of constitutionality, and unconstitutionality must appear beyond reasonable doubt." *Estate of Smiley*, 530 So.2d 18, 21-22 (Miss.1988) (citing *Miss. Power Co. v. Goudy*, 459 So.2d 257, 263 (Miss.1984)). A statute's validity is presumed:
>
>> We adhere here to the rule that one who assails a legislative enactment must overcome the strong presumption of validity and such assailant must prove his conclusions affirmatively, and clearly establish it beyond a reasonable doubt. All doubts must be resolved in favor of validity of a statute. If possible, a court should construe statutes so as to render them constitutional rather than unconstitutional if the statute under attack does not clearly and apparently conflict with organic law after first resolving all doubts in favor of validity.
>
> *Loden v. Miss. Pub. Serv. Comm'n*, 279 So.2d 636, 640 (Miss.1973) (citations omitted).

*Mauldin v. Branch*, 2003 WL 22966144, *5 (¶ 21) (Miss. 2003).

¶33. This Court has previously addressed the constitutionality of the Tidelands Act with regard to the discretion delegated to the Secretary of State to draw boundary lines. We held that:

16

> The mere fact that the discretion granted the Secretary of State could be interpreted in different lights, does not automatically render it vague. See *United States v. Dunkel*, 900 F.2d 105, 108 (7th Cir.1990). The procedure established by the tidelands legislation has a reasonable relation to the governmental purpose of establishing the boundary of public trust lands and as such is not vague.

*Wiesenberg*, 633 So.2d at 996. The Tidelands Act does not guarantee a lease for gaming. Only where, in the discretion of the Secretary of State, with approval from the Governor, it is determined that the granting of a lease would serve a higher purpose than to preserve the natural state of the tidelands, may the littoral landowner be granted a lease. Merely because the discretion may be interpreted in different lights does not automatically render it vague. *See Wiesenberg*, 633 So.2d at 996. As in this case, a party dissatisfied with the Secretary of State's decision may seek judicial review.

## CONCLUSION

¶34. This Court recognizes the duties of the State to preserve and protect the public trust tidelands and the State's delegation of that authority to the Secretary of State. In fulfilling his duties and responsibilities, the Secretary of State must balance the interests of the public with the rights and privileges of the adjacent littoral landowners. Our Legislature has wisely granted authority and responsibilities of certain issues relating directly to the tidelands, particularly those relating to the gaming industry, to various agencies. However, the Secretary of State's decision to grant a lease of the public trust tidelands is a separate and independent decision from those agencies.

¶35. We find that the Secretary of State's decision to deny a lease of the public trust tidelands to Columbia was made within the discretion granted to him by the Mississippi Legislature. We affirm the

17

chancellor's judgment denying Columbia's Petition for Declaratory Action and Mandatory Injunction. We

also reaffirm the constitutionality of the Public Trust Tidelands Act.

¶36.    **AFFIRMED.**

**PITTMAN, C.J., SMITH AND WALLER, P.JJ., COBB AND DICKINSON, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**