# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CP-00992-COA

**IN THE MATTER OF DISBURSEMENT OF REAL PROPERTY ASSETS TO HEIR AND/OR THE SALE OF REAL PROPERTY: WILHELMINA MONTGOMERY**  APPELLANT

**v.**

**ZELPHA MONTGOMERY WHATLEY, EXECUTRIX**  APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 09/07/2022 |
| TRIAL JUDGE: | HON. ROBERT GEORGE CLARK III |
| COURT FROM WHICH APPEALED: | HOLMES COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | WILHELMINA MONTGOMERY (PRO SE) |
| ATTORNEY FOR APPELLEE: | JOHN DOYLE MOORE |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | REVERSED AND REMANDED - 02/25/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.     On September 7, 2022, the Holmes County Chancery Court granted a motion by Zelpha Montgomery Whatley, as executrix of the estate of her mother, Bernice Patton Montgomery Johnson, deceased, permitting the disbursement of six acres of the estate's real property to one of Bernice's children. Another of Bernice's children and heir-at-law, Wilhelmina Montgomery, aggrieved by the court's decision, appealed. Because we find there is insufficient evidence in the record to support the chancellor's finding that Bernice was **"the"** fee simple owner of the tract of land at issue, we reverse and remand to the chancery court for further action consistent with this opinion.

**FACTS AND PROCEDURAL HISTORY**

¶2.     Holmes County resident Bernice Patton Montgomery Johnson died testate on October 16, 2001. On March 5, 2002, Zelpha filed a petition to admit Bernice's Last Will and Testament to probate.[1] The Last Will and Testament was filed on December 17, 2002. On December 19, 2002, an "Order Admitting Will to Probate and Granting Letters Testamentary" was entered, and Zelpha was appointed as the executrix of Bernice's estate and has remained in that capacity. A prior chancellor's June 25, 2007 order determined Bernice's heirs-at-law were:

> Olentha Johnson—her husband—who died on September 27, 2005
> Zelpha Montgomery-Whatley
> Alroy Montgomery
> Eugenia Montgomery Franklin
> Byron Montgomery
> Wilhelmina Montgomery-Matosi
> Barbara Rush Montgomery Davis
> Cantrell Montgomery
> Yvita Causie Montgomery
> Myzell Montgomery

¶3.     Years later, on June 14, 2022, Zelpha filed a motion seeking authorization to convey Alroy Montgomery his portion of the estate's real property. The unsworn motion stated that the estate was "**the fee simple owner**" of 120 acres, sixty acres of which were considered Bernice's "home place." The motion proposed that Alroy receive six acres of this "home

---

[1] A copy of this petition does not appear in the record on appeal. The date of filing comes from a copy of the chancery court's hand-written docket that is included in the record. As will be discussed later, only portions of the estate case file are before the court.

place." The motion further stated that Alroy, who was of retirement age, wanted to build a home on the property and had to own the property to obtain a loan. In exchange for the tract of land described in the exhibit,[2] Alroy would release the estate from all other claims that he may be entitled to as an heir. The chancellor entered an order on June 27, 2022, setting a hearing on the motion for August 25, 2022.

¶4.	Wilhelmina sent a letter to the chancellor that was filed on July 8, 2022. In this letter Wilhelmina complained that she signed a joinder in the above motion "under pressure." She wrote to the court that she had poor eyesight and did not realize the joinder did not name the heir who was to be deeded the property and did not describe the property to be conveyed. Further, she argued that there was no notary present to witness her signature. In her letter, Wilhelmina asked only that the chancellor void her purported joinder to the motion. On July 11, 2022, all the remaining living heirs filed joinders to Zelpha's motion to permit disbursement of the property.[3]

¶5.	At the hearing on Zelpha's motion on August 25, 2022, no sworn testimony or affidavits were presented, and no physical evidence was produced. Zelpha was represented

---

[2] While the motion filed on June 14, 2022, indicated that the exhibit was attached to the motion, apparently the exhibit was not included. However, the legal description and plat were recorded as filed on July 11, 2022.

[3] The chancellor found that two of Bernice's children, Barbara Rush Montgomery Davis and Myzell Montgomery, as well as Bernice's husband, were deceased as of the date of the hearing. Nothing in the record indicates whether these deceased heirs left heirs of their own, but if they did, they are not identified. There was, however, a joinder filed by Landon Montgomery Jordan, who was not listed as a child of Bernice and who may be an heir of one of the deceased children.

by counsel, and Wilhelmina, who resides in France, represented herself and appeared via Zoom. Counsel for Zelpha explained to the chancellor the purpose of the hearing was to determine the estate's power to deed Alroy approximately six acres so that he could build a house. Counsel noted that all the living heirs except Wilhelmina had filed joinders to the motion.

¶6.     When asked by the chancellor to voice her objection to the distribution to Alroy, Wilhelmina explained that (1) the joinder did not specifically state Alroy Montgomery's name; (2) the joinder did not mention the specific acreage; (3) the notary who notarized her siblings' joinders was not present at the time their joinders were signed; and (4) the heirs have a first cousin whom Wilhelmina alleged had inherited an interest in the 120 acres from her father, Robert.[4] Accordingly, Wilhelmina argued that the estate owned only forty acres, not sixty acres.

¶7.     Zelpha's counsel responded to each of Wilhelmina's grievances at the hearing. At the conclusion of the hearing, the chancellor announced from the bench:

> [T]he Court has before it joinders from several individuals who are heirs to the estate. There is not a joinder that has been filed from Ms. Wilhelmina Montgomery; however, she has appeared via Zoom [here] today and participated in the hearing. The Court finds that it has jurisdiction of the parties and the subject matter. Based upon the Court's review of the motion, also the Court's review of the argument taken here today, the Court will grant the

---

[4] On November 29, 2022, after the appeal was taken in the present case, Jeredean Hightower filed a petition in Bernice's estate file seeking to have the estate disburse to her the forty acres she allegedly inherited from her father, Robert. Robert was Jerry and Hallie Patton's son and the brother of Bernice and Margaret.

request to permit the property to be deeded to [Alroy Montgomery].

The chancery court continued,

> There are other issues that Ms. Montgomery raised. **The Court is not ruling on those.** The–if there are additional individuals out there that are claiming an interest in this property, then, those individuals would need to come forward and bring their action before the Court so that the Court can resolve it.

(Emphasis added).

¶8. Pursuant to his bench ruling, on September 7, 2022, the chancellor's written order was entered granting Zelpha's motion to disburse the property described in her motion to Alroy Montgomery. In this order, the chancellor found that at the time of her death, Bernice was "**the fee simple owner**" of the land to be conveyed. On September 9, 2022, an Executrix's Deed was recorded in the Chancery Court of Holmes County conveying the subject property to Alroy.[5] Wilhelmina appeals from this order and raises multiple assignments of error.

¶9. Originally, the appellate record filed with this Court did not contain any estate documents filed prior to June 14, 2022, when Zelpha filed her motion to disburse the property to Alroy. However, this chancery court file began in 2002, and all documents filed

---

[5] The Executrix's Deed does not appear in the appellate record but is attached to Zelpha's response to Wilhelmina's motion filed in the Supreme Court to stay the order from which Wilhelmina appeals. This motion was denied by the Mississippi Supreme Court by an order entered on November 2, 2022. Although not limited by the trial court's order, the deed prepared and executed by the executrix is a quitclaim deed and only effectively conveyed the interest owned by the estate. This deed was also attached to Zelpha's motion to dismiss this appeal. This motion sought to dismiss the appeal as moot because the deed had already been executed and because the order appealed from was not a final order. This motion was denied by the Mississippi Supreme Court on November 9, 2022.

before June 14, 2022, according to the Mississippi Electronic Court (MEC) system, are contained in a "legacy" file (the original paper file used before MEC). Therefore, on its own motion, this Court entered an order on January 26, 2024, seeking supplementation of the appellate record with **the complete** file in Holmes County Chancery Court Cause Number 1:02-cv-00033. The order provided thirty days from entry of the order to provide this Court with "certified copies of all clerk's papers and transcripts filed prior to June 14, 2022, in case number 26CH1:02-cv-00033." On February 14, 2024, the Chancery Court Clerk of Holmes County requested an extension of time to provide the documents ordered to be provided in this Court's January 26, 2024 order, citing renovations at the courthouse making it difficult to locate the file. The clerk requested and was granted numerous extensions of time to produce the file.

¶10.    As a result of the chancery clerk's difficulty in producing the estate file, this Court ordered supplemental briefing from each of the parties "on whether the Estate of Bernice Patton Montgomery Johnson owns the entire fee simple interest in the property at issue." Specifically, the parties were requested in their supplemental briefs to address "what proof in the record before the chancery court supports the chancery court's finding that the Estate is the 'fee simple owner' of the portion of the Estate property to be conveyed to Alroy Montgomery." Those supplemental briefs were ordered to be filed within thirty days from the date of the March 13, 2024 order.  Both parties were granted additional time to file their supplemental briefs.

6

¶11.    Zelpha filed her supplemental brief on April 26, 2024, and Wilhelmina filed her supplemental brief on June 13, 2024. These briefs will be discussed below. On July 15, 2024, the chancery clerk filed a "Notice of Supplemental Record Filed." While the supplemental record does not contain all the documents in the estate file that were filed before June 14, 2022, the supplemental record did contain a copy of Bernice's Last Will and Testament, among other documents.

## STANDARD OF REVIEW

¶12.    Our standard of review of the chancellor's decision in this case is set forth in *Newton County v. Deerfield Estates Subdivision Property Owners Association LLC*, 385 So. 3d 765, 772 (¶14) (Miss. 2024):

> "The Court employs a limited standard of review on appeals from chancery court." *Reddell v. Reddell*, 696 So. 2d 287, 288 (Miss. 1997). "If substantial credible evidence supports the chancellor's decision, it will be affirmed." *Id.* (citing *Carrow v. Carrow*, 642 So. 2d 901, 904 (Miss. 1994)). "This Court will not reverse the chancellor's findings of fact "unless they are manifestly wrong, not supported by substantial credible evidence, or an erroneous legal standard was applied." *Bayview Land, Ltd. v. State ex rel. Clark*, 950 So. 2d 966, 971-72 (Miss. 2006) (citing *Columbia Land Dev. LLC v. Sec'y of State*, 868 So. 2d 1006, 1011 (Miss. 2004)). "A chancellor's conclusions of law will be reviewed de novo." *McBroom v. Jackson Cnty.*, 154 So. 3d 827, 831 (Miss. 2014) (quoting *Lowrey v. Lowrey*, 25 So. 3d 274, 285 (Miss. 2009)).

## DISCUSSION

¶13.    The contested issue before the trial court was the estate's ownership interest in the real property described in Bernice's will as the Jerry and Hallie Patton Farm, which is further described as the "East half of the Northeast Quarter and the East half of the West half of the

Northeast Quarter of Section 36, Township 14, Range 2 East, in Holmes County, Mississippi." The will itself purported to bequeath only an undivided one-half interest in the subject property to the "JERRY AND HALLIE-PATTON FAMILY ESTATE, AS ORGANIZED BY MYSELF, BERNICE PATTON MONTGOMERY JOHNSON, ON BEHALF OF, AND FOR THE BENEFIT OF, MY CHILDREN AND THEIR CHILDREN."[6] Zelpha maintains that Bernice's estate owned sixty acres; therefore, each of the ten heirs was entitled to six acres. Wilhelmina contends that Bernice's estate only owned forty acres, and therefore each heir was entitled to only four acres.

¶14. First, we note that there is no deraignment of title in the record for the 120 acres at issue in this case. It appears, however, that all parties agree that whatever interest Bernice owned at the time of her death, she inherited that interest from her mother, Hallie Patton, who died in 1984. According to Wilhelmina's brief, Hallie's husband, Jerry, died intestate in 1969. Again, according to Wilhelmina, Jerry fathered three children by Hallie and one daughter by another woman before he married Hallie.[7] Accordingly, Wilhelmina questions how the ownership of the 120 acres was determined after Jerry's death.[8]

---

[6] While this language could suggest that a trust had been created by Bernice, there is no evidence of a trust in the record.

[7] These three children were Bernice, Robert, and Margaret. Robert died in 1974 and had one daughter at the time.

[8] We do not know how the land was titled before Jerry's death. If it was titled to Jerry and Hallie as joint tenants with rights of survivorship, Hallie would have owned a 100% interest in the subject property upon Jerry's death. If the land was not jointly titled and was not homestead property, Hallie and the four children may have each inherited a 20%

¶15. In any event, Hallie executed a will in 1974.[9] In this will, she left the 120 acres at issue to Bernice and Margaret to "share and share alike." It was not until 2014 that Zelpha petitioned to have Hallie's will admitted to probate and was appointed executrix with the will annexed.[10] If this will was properly probated, and if Hallie owned a 100% interest in the property, then Bernice and Margaret each obtained an undivided 50% interest in the 120-acre tract. If the will has not been properly probated, and if Hallie owned a 100% interest in the property, then the tract would have passed through intestacy to her heirs-at-law, unless or until the will is properly probated.[11] Wilhelmina bases her argument on her contention that Robert's heir had an interest in the 120-acre tract from the time of his father Jerry's death.

¶16. On the other hand, Zelpha contends in her supplemental brief:

---

undivided interest in the property. We simply do not know.

[9] A copy of this will was attached to Zelpha's Motion to Supplement the Record filed with this Court. This motion was denied by an order entered on July 6, 2023. However, citing *Teal v. Jones*, 222 So. 3d 1052, 1058 (¶21) (Miss. Ct. App. 2017), the order states that this Court can take judicial notice of the will filed of record in Holmes County Chancery Court.

[10] There is no statute of limitations on the probate of a will. *Robberson v. Burton*, 790 So. 2d 226, 229 (¶14) (Miss. Ct. App 2001).

[11] In *Robberson*, the plaintiff "relie[d] on *Virginia Trust Company v. Buford*, 123 Miss. 572, 86 So. 356 (1920), for the principle that a will not submitted for probate in Mississippi is not effective 'as an instrument of title.' *Id*. at 357. In *Virginia Trust*, the Mississippi Supreme Court held that where a will was not presented for probate, property must be handled as though the testator had died intestate. *Id*. Appellees argue that there was no evidence that the will *had not* been probated. **It was their burden to prove that it had if they intended to rely on it as a muniment of title.**" *Id*. at 228 (¶8) (italics in original) (bold emphasis added).

The proceedings below show that the 60 acres in question–the land the Chancery Court referred to as the "Estate Property" in its *Order* below–was inherited by Bernice Montgomery from her mother, Hallie Patton, as her share of a bequest of an undivided one-half (½) interest in a 120-acre tract. *R*. at 54-56; *T*. at 7-9. The other one-half (½) interest in that 120-acre tract was bequeathed to Bernice's sister Margaret. *Id*. The 60 acres representing the Estate Property in question is the portion the family refers to as Bernice's "homeplace," as it was the portion used and lived on by Bernice during her lifetime. *R*. at 19. This is the portion of land referred to by Zelpha Whatley, Executrix of the Estate, when she described managing her mother's land for the Estate since Bernice's death. *R*. at 58-59; *T*. at 11-12. The other 60 acres are therefore considered by all parties as the portion of the original 120 acres now belonging to Margaret's heirs.

(Footnote omitted). Zelpha's argument is based upon her contention that Bernice and Margaret owned separate sixty-acre tracts; however, she points to no evidence of any partition or deed between the sisters to support her argument.

¶17. At most, Hallie's will gave Bernice and Margaret each an undivided one-half interest in the entire 120-acre tract of land. This would make the sisters tenants in common for the entire tract. *See Lockhart v. Collins*, 81 So. 3d 1050, 1054 (¶13) (Miss. 2012) ("A tenancy in common occurs when 'two or more persons, in equal or unequal undivided shares,' have an equal right to possess the property." (footnote omitted)). In other words, the sisters each have an undivided 50% interest in each acre of the tract. Based upon the absence of evidence to the contrary, they each still own an undivided one-half interest in the entire 120-acre tract.

**CONCLUSION**

¶18. We conclude that the chancery court's finding that Bernice was **"the fee simple owner"** of the land being conveyed is not supported by the evidence in the record.

Accordingly, the chancery court's order granting the disbursement of a portion of the estate's real property interest is reversed, and this matter is remanded for the chancery court to set aside the "Executrix's Deed" that was issued as a result of the order and for further proceedings consistent with this opinion.[12]

¶19.   **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McCARTY, WEDDLE AND ST. PÉ, JJ., CONCUR. WESTBROOKS AND McDONALD, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., NOT PARTICIPATING.**

---

[12] Although the quitclaim deed would convey only such interest as owned by the estate, the six acres conveyed was based upon Zelpha's allegation that the estate owned sixty acres outright and that each heir would be entitled to one-tenth of the acreage.