**UNITED STATES of America,**
**Appellant,**

v.

**HARRISON COUNTY, MISSISSIPPI,**
**et al., Appellees.**

**No. 24853.**

United States Court of Appeals
Fifth Circuit.

Aug. 15, 1968.

Robert E. Hauberg, U. S. Atty., Jackson, Miss., Joseph M. F. Ryan, Jr., Edwin L. Weisl, Jr., Asst. Attys. Gen., Dept. of Justice, Alec P. Bouxsein, Edmund B. Clark, St. John Barrett, Irvin N. Tranen, Edward Lazowska, Roger P. Marquis, Attys., Dept. of Justice, Washington, D. C., John Doar, Stephen J. Pollak, Asst. Attys. Gen., Civil Rights Division, Clyde O. Martz, Asst. Atty. Gen., J. Edward Williams, Acting Asst. Atty. Gen., Land and Natural Resources Division, for appellant.

Joe T. Patterson, Atty. Gen., Dugas Shands, Asst. Atty. Gen., John A. Welsch, Jr., Jackson, Miss., James S. Eaton, Charles R. Galloway, George E. Morse, Gulfport, Miss., Jacob D. Guice, Biloxi, Miss., Owen T. Palmer, Jr., Gulfport, Miss., Garner W. Green, Jackson, Miss., Gaston H. Hewes, George R. Smith, Sr., Gulfport, Miss., Edward G. Tremmel, Biloxi, Miss., Boyce Holleman, George Estes, Jr., D. Knox White, Gulfport, Miss., Arnaud Lopez, Biloxi, Miss., Eaton, Cottrell, Galloway & Lang, Gulfport, Miss., McDonnell & Lopez, Rushing & Guice, W. L. Guice, Biloxi, Miss., Morse & Morse, Rice P. York, Green, Green & Cheney, Jackson, Miss., for appellees.

Before GEWIN and COLEMAN, Circuit Judges, and HUGHES, District Judge.

COLEMAN, Circuit Judge:

The United States brought suit for the enforcement of its contract with Harrison County, Mississippi, dated January 23, 1951. Pursuant to this agreement the federal government contributed $1,133,-000 to the construction of a sand beach in the waters of the Mississippi Sound. The County dedicated the beach to the public use. The District Court dismissed the complaint. We reverse and remand, with directions.

The lawsuit began May 17, 1960. The United States, as sole plaintiff, filed a complaint against Harrison County, its supervisors and sheriff, and against the City of Biloxi, Mississippi, its mayor, and chief of police. The case was ultimately tried on a second amended complaint, which had been filed February 20, 1963. In the meantime, by order of the Court *sua sponte*, about 1800 individuals owning land fronting the beaches were brought in as necessary parties defendant. The case came to final decision March 7, 1967, on a record of 2628 pages, including approximately 375 exhibits.

Harrison County is bounded on its entire south side by the waters of the

Mississippi Sound, an arm of the Gulf of Mexico. It was formerly a part of the District of Mobile, Spanish West Florida, but was annexed to the Mississippi Territory on May 14, 1812. The Territory became a State on December 10, 1817, and Harrison County, named for the hero of Tippecanoe, was organized February 5, 1841. Since this is a resort area, outstandingly attractive to tourists, this has been the controlling factor in the history, the government, and the economy of the region.

The origins of this litigation go a long way back. For decades, a public road extended east and west along the south side of Harrison County, parallel to and along the sand beaches of Mississippi Sound. In September, 1909, a severe tropical hurricane caused long sections of this beach road to be washed away. It was rebuilt, but only six years later another hurricane inflicted similar damages. It became clear that some form of protection would have to be devised if the road was to be maintained. The result was that in 1924 the Mississippi Legislature passed an Act, Chapter 319, Laws of 1924, approved April 9, 1924, the pertinent parts of which, including the title, are now copied as follows:

"AN ACT to authorize any county of the state where any part of the land of such county touches or joins any body of tidewater, to erect sea walls or other structures or devices for the protection of public highways extending along the beach or shore of any such body of tidewater and to issue the bonds of the county therefor and to apply a portion of the gasoline tax collected in such county towards the payment of the interest and principal of such bonds.

"Certain counties may erect sea walls.

"SECTION 1. Be it enacted by the Legislature of the State of Mississippi, That whenever any public road, street or highway shall extend along the beach or shore of any body of tide-water, and such road, street or highway, or any part thereof, shall be exposed to, subject to, or in danger of, damage by water driven against the shore by storms, and is not protected in any sea wall district, the boards of supervisors shall have the power, and it is hereby made their duty, to erect and maintain all necessary sea walls, breakwaters, bulkheads, *sloping beach,* [emphasis added] or other necessary device to protect and preserve such roads, streets and highways, and for that purpose, and for the purpose of constructing or improving such highway, may issue the bonds of the county therefor.

"Boards of supervisors may exercise right of eminent domain.

"Sec. 3. For the purpose of this act, the several boards of supervisors are hereby clothed with the power and authority, and it is made their duty, to exercise the right of eminent domain in order to procure the right of way for such roads, streets, highways, sea walls, breakwaters, bulkheads, *sloping beach* [emphasis added], and such other devices as may be adopted for the protection of such highways, and shall have the power to pass all necessary ordinances for the preservation and protection of any such road, sea wall, *sloping beach* [emphasis added] or other device constructed under this act, and the violation of such ordinances shall constitute, and be punished as, a misdemeanor."

Pursuant to this statute, on April 27, 1925, as appears of record in the Minutes of the Board, of which we are entitled to take judicial notice, the Supervisors resolved that an easement to a strip of land running generally parallel with and between the beach road and the waters of the Gulf should be acquired by eminent domain. Omitting unessential details, the notice to the landowners described a strip of land fifty feet in width along the beach between parallel lines of and across all the land between the Biloxi Lighthouse and Henderson Point, "the strip of land lying south of the existing

public Beach Road or Public Highway running more or less parallel to the shore line of the Gulf of Mexico, and the north edge of said strip of land being at varying distances from the south line of the said public highway". The improvements to be constructed on said easement were described as "a reinforced concrete step-type wall" extending from the south line of the easement to heights of from eight to eleven feet above mean Gulf Level.

After due publication of notice, no landowner claimed any damages for the taking of the easement.

The Board therefore proceeded with the construction. It was completed in 1928 at a cost of $3,400,000. The people of the entire State helped pay for it. The 1924 Act authorized the application of one-half of the gasoline taxes collected in Harrison County (which otherwise would have gone into the state treasury) to the retirement of the construction bonds, which were not fully paid out until 1952. So, all the people of Mississippi, for twenty-four years, contributed directly to the cost of the seawall.

In Harrison County v. Guice, 244 Miss. 95, 140 So.2d 838 (1962), the Supreme Court of Mississippi held that the 1924 statute authorized the County "to erect and maintain all necessary seawalls, breakwaters, bulkheads, *sloping beach* [emphasis added], or other necessary device to protect and preserve such roads, streets, and highways".

Henritzy v. Harrison County, 180 Miss. 675, 178 So. 322 (1938) held that Chapter 319 of the Laws of 1924 complied with the Mississippi Constitution and that title to this fifty foot seawall right-of-way had vested in Harrison County by virtue of the Mississippi ten year statute of limitation [then Code of 1930, Section 2287]. This included all the elements of the right-of-way ownership as authorized by the statute, including the right to construct sand beaches at any future time.

It is conceded that after the seawall was completed the incessant action of the waves washed away the sand to the south

of these artificial barriers. Such beaches as existed south of the seawall disappeared. The land thus formerly occupied went under the water bottoms of the Mississippi Sound and became the property of the State, in trust for the people.

The legal result may best be described by quoting the language of the Supreme Court of Mississippi in Parks v. Simpson, 242 Miss. 894, 137 So.2d 136 (1962), as follows:

"This Court, by an unbroken line of decisions over 100 years, has declared that the State 'is the owner of lands in the beds of all its shores, inlets, and adjacent to the islands, over which the tides of the sea ebb and flow, and that it holds title as trustee for the people of the State'. Giles v. City of Biloxi, 237 Miss. 65, 112 So.2d 815, 823, 113 So.2d 544; Xidis v. City of Gulfport, 221 Miss. 79, 72 So.2d 153; Crary v. State Highway Commission, 219 Miss. 284, 68 So.2d 468; State ex rel. Rice v. Stewart, 184 Miss. 202, 184 So. 44, 185 So. 247; Rouse v. Saucier's Heirs, 166 Miss. 704, 146 So. 291; Money v. Wood, 152 Miss. 17, 118 So. 357; Martin v. O'Brien, 34 Miss. 21."

We now come to the events which engendered this litigation.

In 1947, there came another hurricane, apparently more damaging than its known predecessors. It did $18,000,000 in damages to the Gulf Coast, most of it in Harrison County. It undermined and destroyed a considerable portion of the pavement on U. S. Highway 90; it destroyed all the piers along the Harrison County shore, numerous homes, tourist cottages, seafood canneries, cafes, bridges, and similar structures. This included the seawall, no longer protected by sand beaches from the buffeting of the waves.

Something had to be done. The County could not do it; it still owed $900,000 on the original seawall.

As usual, the eyes of the needy turned toward Washington. Congress had enacted Public Law 727, 79th Congress, approved August 13, 1946, 60 Stat. 1056,

which provided for federal assistance to construction for the protection of *publicly owned* shores against erosion by waves and currents. This legislation additionally provided that where a political subdivision had theretofore erected a seawall to prevent erosion by waves and currents to a public highway considered by the chief of engineers sufficiently important to justify protection, then the United States could contribute to the repair and protection of such wall by the building of an artificial beach. The federal contribution was limited to one-third of the original cost of the wall, and specifically could be extended only for "shores of the United States that are owned by States, municipalities, or other political subdivisions". A 1956 amendment to the Act is of no consequence because the transaction now under consideration had been consummated long prior to that time.

The studies required by the Act of Congress, made at the request of Harrison County, together with the recommendations of the Beach Erosion Board, were submitted to Congress for its approval. It was recommended that federal aid be extended "provided the State of Mississippi or local governmental agency: * * * provide all necessary lands, easements, and rights-of-way for accomplishment of the work * * * [and] assure perpetual public ownership of the beach and its administration for public use".

Again, the governing authorities of Harrison County went to the Mississippi Legislature. They secured the passage of Chapter 334 of the Laws of Mississippi of 1948, authorizing Harrison County to borrow money for the purpose of repairing, strengthening, or maintaining seawalls *and to comply with Public Law 727, 79th Congress* [emphasis added].

The preamble to the Act recited that the beach erosion studies of Harrison County, Mississippi, had been completed, that federal participation in the proposed improvements, comprising repair of the seawall and the construction of the beach with attendant drainage facilities, to the extent of one-third of the original cost of the wall, had been recommended. The statute further recited that *the State of Mississippi* and Harrison County would be required, among other things, to provide at their own expense all necessary lands, easements, and rights-of-way and to "*assure perpetual public ownership of the beach and its administration for public use only*".

Section 2 of the Act of 1948 gave the Board of Supervisors "full power and authority to *meet* and *do* and *grant* any requests of the United States Beach Erosion Board of the United States Army Engineers by and under public law 727, 79th congress", including providing the necessary land, easements, and rights-of-way, as above recited, and "To assume (sic) perpetual ownership of any beach construction and its administration for public use only".

The Act concluded with the following language:

"That the intent and purpose of this act is to give unto the respective boards of supervisors the full power and authority to carry out all the provisions herein, and to act independently, jointly or severally with the United States government by and under public law 727, 79th congress".

It would be difficult to conceive of a more positive, complete, thorough, or unlimited grant of authority to comply with the requirements of a federal program. This was not only the solemn legislative enactment of a sovereign state but was, in effect, a grant directly from the owner of the property.

After Mississippi enacted Chapter 334 of the Laws of 1948, Congress approved the federal grant for the repair of the Harrison County seawalls and the construction of the sand beach, *on bottoms then under water,* Act of June 30, 1948, 62 Stat. 1172.

On December 22, 1950, the Board of Supervisors of Harrison County adopted a resolution perpetually dedicating to the public *as a public beach* that sand beach to be constructed from Biloxi Lighthouse

on the east to Henderson Point on the west.

Thereafter, on January 23, 1951, Harrison County executed a contract with the United States, whereby, in return for federal financial assistance in the sum of $1,133,000, the County agreed to prosecute the project *as authorized by Congress.* It agreed to provide at its own expense all necessary lands, easements, and rights-of-way, and agreed to *assure perpetual public use of the beach* and the administration thereof for public use only.

After all these things had been done, *and not until then,* did construction begin. The sand beach became a reality, constructed altogether with public money, one-third of which had been furnished by the United States. The federal funds were made available by the Congress in reliance on the 1948 Act of the Legislature. In turn, these funds were disbursed by the United States in reliance upon the duly authorized acts of the Board of Supervisors of Harrison County, perpetually dedicating the beach to the use of the general public.

Beginning in 1953, and continuing at least until 1963, there were incidents in which members of the general public were forcibly denied the use and enjoyment of the beach, in violation of the foregoing dedication of December 22, 1950, and contrary to the solemn contract of January 23, 1951.

This chain of events prompted the United States to file suit against Harrison County for the specific performance of the contract as to perpetual public use of the beach. Injunction was sought against any local officials to prevent their interference with the performance of the county obligation.

■ Harrison County defended on the ground, in addition to one other, that it was under no obligation, by contract or otherwise, to insure that the beach be maintained and administered as a public beach, and that it had no power, statutory or otherwise, to do so. Without repeating what has already been clearly, we

hope, set out as to the statutory authority granted Harrison County by the Acts of 1924 and 1948 and the acts of the Supervisors in pursuance thereof we hold that these arguments are wholly devoid of merit. They are accordingly rejected. We repeat that it would be difficult to conceive of a more complete, thorough, unlimited authority than that granted by the State of Mississippi in its Acts of 1924 and 1948. The State, as owner and trustee of the lands for the use of *all the people of Mississippi,* had the power to grant such authority for public use. The dedication was made and the contract was executed. The money was spent and the beach was constructed. The obligation of Harrison County as assumed in its contract with the United States is inescapable and must be enforced.

It is sought, however, to defeat such enforcement by reason of the decision of the Supreme Court of Mississippi rendered in the case of Harrison County v. Guice, 244 Miss. 95, 140 So.2d 838 (1962). After the United States had filed the suit presently *sub judice,* Mrs. Lee Dicks Guice, now deceased, then an owner of land abutting the seawall, brought suit against Harrison County, claiming fee simple title to that portion of the sand beach constructed adjacent to her property. The United States was not a party to the suit. The County denied that Mrs. Guice was the owner of the beach, but asserted that it was erected as a protective device and not for recreation. It denied making or attempting to make it a public beach, denied authorizing or encouraging its use by the public, and denied its authority to do so.

Conceding that the State is the owner of the lands in the beds of its shores over which the tides of the sea ebb and flow, that it holds such title as trustee for the people, and that the State has such title to all such lands below mean high tide, the State Supreme Court nevertheless held that when the sloping beach was constructed Mrs. Guice became the owner of that part adjacent to her lands *by artificial accretion,* subject only to the

repair and maintenance of the seawall and its protecting sand beach.

It was this decision which prompted Harrison County to assert, and caused the District Court to hold, that this seventeen mile beach, constructed at a cost of millions to the United States and to the taxpayers of Mississippi is not to be made available to the use of the general public.

■■ With unfeigned respect for the Supreme Court of Mississippi, we concede its primary jurisdiction in the settlement of disputed land titles. We have no intention of trespassing on that jurisdiction. Our difficulty with *Guice* is that the United States was not a party to the litigation. The decision, therefore, is not *res adjudicata* as to the rights of the United States. Four conditions are essential to sustain a plea of res adjudicata—(1) identity of things sued for, (2) identity of cause of action, (3) identity of persons and parties to the action, (4) and identity of quality or character in the person against whom the claim is made, Pray v. Hewitt, 254 Miss. 20, 179 So.2d 842 (1965). See also, Durfee v. Duke, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963); Mallow v. Hinde, 12 Wheat. 193, 25 U.S. 193, 6 L.Ed. 599 (1827); Harris v. Hardeman, 14 How. 334, 55 U.S. 334, 14 L.Ed. 444 (1852); Bank of Richton v. Jones, 153 Miss. 796, 121 So. 823 (1929); 50 C.J.S. Judgments §§ 592, 601.

We find ourselves unable to follow *Guice* as a matter of *stare decisis* because the County in that case denied that it had agreed to or was attempting to "operate" a public beach.

Subject only to the rights of repair and maintenance, which had already been surrendered as a result of the 1924 enactment, the obvious effect of the *Guice* decision is to award this beach, free of charge, to the adjoining landowners. By the application of the common law doctrine of artificial accretion the private landowners were denominated the donees of land which unquestionably belonged to the State when the improvements began.

We are of the view that under the facts of this case this cannot be squared with Section 95 of the Mississippi Constitution of 1890. That section reads as follows:

"Lands belonging to, or under the control of the state, shall never be donated *directly* or *indirectly* [emphasis added] to private corporations or individuals."

■ We assume that this provision was not called to the attention of the Supreme Court of Mississippi, as it is not discussed in the opinion. In any event, the constitutional provision supersedes and abrogates the common law, 15A C.J.S. Common Law §§ 11 and 12.

■ We thus have no doubt that the State, in obedience to this constitutional mandate, unshackled by the common law, had full authority to enact Chapter 334 of the Laws of 1948, and pursuant thereto the Board of Supervisors had full authority to contract as it did with the United States for the acquisition of public funds and the perpetual dedication of this beach to the use of the general public. The common law doctrine of artificial accretion must yield to the command of the Mississippi Constitution as to the disposition of state owned lands.

■■ The use of the beaches is, of course, subject to reasonable regulations by the State in the exercise of its police powers and such public use must be enjoyed in compliance with all valid laws of the State of Mississippi. For instance, such use cannot unreasonably interfere with the littoral rights of the adjoining landowners. This includes the enjoyment, without unreasonable interference, of access to the water for swimming, bathing, boating, fishing, and other customary aquatic pursuits. See Treuting v. Bridge and Park Commission of City of Biloxi, Miss., 199 So.2d 627 (1967).

It necessarily follows that the United States is entitled to have its contract with Harrison County enforced. This can be accomplished by granting appropriate injunctive relief against inter-

ference with the rights of the general public to the use of the beach as herein enunciated.

The Judgment of the District Court is reversed and remanded for further proceedings not inconsistent herewith.

Reversed and remanded.