# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-CA-01134-SCT

*STATE OF MISSISSIPPI, BY AND THROUGH
MICHAEL WATSON IN HIS OFFICIAL
CAPACITY AS SECRETARY OF STATE AND
TRUSTEE OF THE PUBLIC TIDELANDS TRUST*

*v.*

*RW DEVELOPMENT, LLC, THE CITY OF
BILOXI, MISSISSIPPI AND HARRISON COUNTY,
MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/04/2021 |
| TRIAL JUDGE: | HON. JENNIFER T. SCHLOEGEL |
| TRIAL COURT ATTORNEYS: | KARL CRAWFORD HIGHTOWER |
| | JONATHAN PAUL DYAL |
| | MICHAEL E. WHITEHEAD |
| | RODERICK MARK ALEXANDER, JR. |
| | MARY JO WOODS |
| | JAMES EVERETT LAMBERT, III |
| | MICHAEL F. CAVANAUGH |
| | PETER C. ABIDE |
| | TIM C. HOLLEMAN |
| | HOLLIS TAYLOR HOLLEMAN |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | RODERICK MARK ALEXANDER, JR. |
| | BEN HARRY STONE |
| | DOUGLAS T. MIRACLE |
| | MARY JO WOODS |
| | JONATHAN PAUL DYAL |
| | BRYAN CARL SAWYERS |
| | JAMES EVERETT LAMBERT, III |
| ATTORNEYS FOR APPELLEES: | PETER C. ABIDE |
| | TIM C. HOLLEMAN |
| | MICHAEL F. CAVANAUGH |
| | MICHAEL E. WHITEHEAD |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 03/02/2023 |

MOTION FOR REHEARING FILED:

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.    The present appeal stems from a dispute involving real property located in the City of Biloxi, Harrison County, Mississippi, beginning at the toe of the seawall at the end of Veterans Avenue and extending across the sand beach, waterward, into the Gulf of Mexico and Mississippi Sound.  The City and the County adopted a joint resolution that authorized the lease of a piece of property to RW Development, LLC, for the development of a joint public/private pier seaward of Veterans Avenue.  As a result, the State initiated the instant action seeking a declaratory judgment that the State is the sole and exclusive authority to lease Public Trust Tidelands, that the City had no authority to lease the subject property to RW, and that preliminary and permanent injunctive relief should issue against the actions of the City and RW.  The Chancery Court of Harrison County denied the State's requested relief and ultimately determined that the City and County had statutory authority to lease the property to RW for public use.

¶2.    Because we agree that Mississippi statutory law grants the City the authority to build the pier, we affirm the judgment of the chancery court.

### FACTS AND PROCEDURAL HISTORY

¶3.    It is undisputed that the subject property, with the exception of Veterans Avenue, constitutes public trust tidelands.  "Tidelands and submerged lands are held by the state in trust for use of all the people, and are so held in their character as the beds and shores of the

sea and its tidally affected arms and tributaries for the purposes defined by common law and statutory law." Miss. Code Ann. § 29-15-5(1) (Rev. 2020); *see also **Columbia Land Dev., LLC v. Sec'y of State***, 868 So. 2d 1006, 1011 (Miss. 2004) ("The title to the public trust tidelands was vested in this State at the inception of statehood and such title is held in trust by the State of Mississippi for the benefit of the public." (citing Miss. Code Ann. § 29-15-5 (Rev. 2000))).

¶4. Veterans Avenue is a street located within the borders of the City of Biloxi. The City is the owner of the fee simple land comprising the right-of-way of Veterans Avenue, which extends south of Highway 90 to the Harrison County seawall. Several decades prior to the instant case, the Biloxi Port Commission constructed a pier on the subject property without having a tidelands lease from the Secretary of State. In 2004, the City dissolved the Biloxi Port Commission and conveyed its interest in the pier to the City. The next year, Hurricane Katrina destroyed the pier, only pieces of which remain today.

¶5. In 1924, the Mississippi Legislature adopted Mississippi Laws (1924) chapter 319, codified in Mississippi Code Sections 65-33-1 to -71 (Rev. 2021), also known as the Seawall Act. The Seawall Act gave the boards of supervisors of counties abutting the Mississippi Sound jurisdiction over the sand beach. "Pursuant to the statutes, the supervisors have the power and duty to erect and maintain sea walls, shore stabilization structures, . . . sloping beaches or other necessary devices to protect and preserve roads, streets, and highways." ***Miss. State Highway Comm'n v. Gilich***, 609 So. 2d 367, 372 (Miss. 1992) (citing Miss. Code Ann. § 65-33-1 (1972)). In 1948, the Legislature adopted Mississippi Laws (1948)

3

chapter 334, codified in Mississippi Code Section 65-33-51 (Rev. 2021), approving federal participation in building a sloping sand beach south of the seawall in Harrison County and giving the boards of supervisors power and authority to "assure maintenance of the seawall" and "assume perpetual ownership of any beach construction and its administration for public use only[.]" Miss. Code § 65-33-51(2)(a), (e) (Rev. 2021). In the instant case, the County assumed ownership of the beach construction and its administration for public use only on December 22, 1950, by resolution of the Harrison County Board of Supervisors.

¶6.    On May 17, 1960, in the United States District Court for the Southern District of Mississippi, the United States filed suit, *United States v. Harrison County, Mississippi*, Civil Action Number 2262, putting in issue the ownership, control, and public-private status of the sand beach. The federal lawsuit resulted in findings and a final judgment by the district court, which specifically enjoined both the State and Harrison County as its "political subdivision" as follows:

> The right to zone, maintain, clean, repair and replenish the sand beach, the right to remove any structures existing in violation of this judgment, and **the right to adopt and enforce reasonable regulations with respect to the use of the beach** by the general public **are all vested in the Board of Supervisors of Harrison County,** subject to the rights of the general public set forth in this judgment . . . ."

Final Judgment at 5, *United States v. Harrison Cnty., Miss.* (S.D. Miss. Oct. 8, 1970) (No. 2262) (emphasis added).

¶7.    In September 2009, the Harrison County Board of Supervisors entered into a memorandum of understanding between the Secretary of State, the Board, and the Harrison County Sand Beach Authority. The memorandum of understanding stated that the Secretary

4

of State and the Board agreed that the Harrison County Sand Beach was situated on Public Trust Tidelands that were owned by the State in trust for the people of Mississippi, that the Secretary of State serves as the trustee of the tidelands, that the sand beach would be administered as a public beach, and that the Board should ensure its continued free and open public access and public use. Further, the memorandum of understanding stated that

> The [Board] may from time to time prepare master plans or changes to the master plans for modifications to the structure, design, layout or landscaping of the topography or footprint of the Sand Beach, to include but not limited to . . . piers . . . . In preparing any such plans, the [Board] shall seek input from the SOS in his capacity as Trustee of the Public Trust Tidelands giving due regard to the public policy and interests of the State of Mississippi. Construction of structures in any master plan must be approved as provided in this MOU.
>
> . . . .
>
> No structure may be constructed or placed on the Sand Beach without a permit or lease as provided in this agreement.
>
> . . . .
>
> All permanent structures require a lease from the SOS. Application for permanent structures on the Sand Beach shall be made to and approved by the SOS.

¶8. RW, the City, and the County sought to restore the Veterans Avenue Pier and make it a public handicapped-accessible pier bordering the sand beach in Harrison County through a public-private partnership. Consequently, in February 2018, pursuant to Mississippi Code Section 29-1-107 (Rev. 2020), the State entered into a tidelands lease with the County to construct free public boardwalks and pathways to promote public access and public use of tidelands along a portion of the property not at issue in the case. The lease expressly

5

excluded any commercial activity. Although the lease included approximately 3.75 acres of public trust tidelands, because it was to be used for a public project of a governmental entity that served a higher public purpose of promoting the public access and public use of tidelands, the lease was exempt from rental fees under Mississippi Code Section 29-15-13 (Rev. 2020).

¶9. On July 2, 2019, the City passed a "Resolution Authorizing Agreement with RW Development, LLC for Option to Build and Lease a New Public Municipal Pier; and for Related Purposes." The resolution stated that the City, as the "statutorily-designated agent of the State of Mississippi acting as trustee and steward of the Public Trust for Tidelands[,]" had the power to construct improvements to public trust tidelands in order to promote and enhance public access to the water and tidelands, in addition to promoting, fostering, and enhancing marine-related public and private development and use of piers. The City cited Mississippi Code Section 21-17-1(2) (Rev. 2015) and Mississippi Code Section 57-7-1 (Rev. 2022) as authority to enter into an option agreement with RW to lease and build a municipal pier on the property at issue. The purpose of the option agreement was "to lease the Property and the pier improvements . . . for public and private access, use and enjoyment." The option agreement stated that

> The CITY and RW understand and agree that, in addition to the joint public-private use of the Property for access to the water and marine-related recreation, RW shall have the non-exclusive right to use the Property and its improvements as an integral part of RW'S commercial developments on RW'S parcels contiguous to the Property; provided, however, no gaming shall be allowed on the Public Municipal Pier nor on any vessels docked or berthed at the pier. RW and patrons of its businesses shall enjoy the use of the Municipal

6

Pier jointly with public use according to rules and regulations approved by the CITY and RW, which approval shall not be withheld unreasonably.

¶10. Consequently, on July 11, 2019, the State of Mississippi, through Delbert Hosemann in his official capacity as Secretary of State and trustee of the public trust tidelands, filed a complaint against RW and the City, claiming that a party must obtain a lease from the Secretary of State before building or developing upon public trust tidelands. "The Secretary of State is a constitutionally created office and is statutorily responsible for the public trust lands." *Columbia Land Dev.*, 868 So. 2d at 1013 (internal quotation marks omitted) (quoting *Sec'y of State v. Wiesenberg*, 633 So. 2d 983, 997 (Miss. 1994)). "Indeed, the role of the Secretary of State is that of a trustee." *Id.* at 1014. Because neither the City nor RW had executed a tidelands lease, the State requested declaratory relief, a temporary restraining order preventing RW from constructing, maintaining, or using a pier on the property at issue until a tidelands lease had been obtained, a preliminary injunction for complete cessation of all construction on the property, and a permanent injunction for complete and total cessation of all construction until the matter could be fully adjudicated.

¶11. The chancellor entered an agreed order granting the County's motion to intervene as an additional defendant. Each defendant filed answers and affirmative defenses to the State's complaint.

¶12. In the interim, the Court handed down *RW Development, LLC v. Mississippi Gaming Commission*, in which it found that the circuit court had correctly affirmed the Mississippi Gaming Commission's decision to deny the gaming site application of RW for its failure to meet the governing statutory and regulatory requirements under Mississippi Code Section

97-33-1 (Rev. 2014) and 13 Mississippi Administrative Code Part 2, Rule 1.4(d) (adopted May 1, 2013), Westlaw. *RW Dev., LLC v. Miss. Gaming Comm'n (RW Dev. I)*, 307 So. 3d 404, 406 (Miss. 2020). Section 97-33-1 required that "[t]he part of the structure in which licensed gaming activities are conducted is located entirely in an area which is located no more than eight hundred (800) feet from the mean high-water line. . . of the waters within the State of Mississippi . . . ." *Id.* at 413 (quoting Miss. Code Ann. § 97-33-1(b)(i) (Rev. 2014)). Further, 13 Administrative Code Part 2, Rule 1.4(d), provided that "[t]he applicant . . . must own and/or lease land that is contiguous both to the parcel used to conduct gaming and the point of reference used to determine the mean high water line, and this land must be shown to be an integral part of the project." *Id.* at 417 (quoting 13 Miss. Admin. Code Pt. 2, R 1.4(d)). The Gaming Commission found that RW Development failed to prove that its proposed gaming site was within eight hundred feet of the mean high water line and failed to prove that it owned or leased land contiguous to the mean high water line. *Id.* at 421.

¶13. Shortly after *RW Development I* handed down, the Board terminated the 2009 memorandum of understanding with the Secretary of State.

¶14. On March 12, 2021, the State filed a motion for summary judgment and argued that:

> the Secretary of State had the sole authority to lease public trust tidelands; therefore, the State asserted that a party must obtain a tidelands lease from the Secretary of State before developing or building on public trust tidelands.

¶15. On April 5, 2021, the County voted to enter into a joint lease with the City and RW for the construction of a municipal pier. The City then placed a proposed resolution, Resolution No. 218-21, on its city council agenda that authorized the mayor to execute a

8

lease agreement jointly with the County to RW for construction of a pier on the subject property.

¶16.   The State filed a motion for temporary restraining order and preliminary injunction, requesting that the chancery court prevent the City from adopting the resolution. Further, the State requested a TRO and preliminary injunction to prevent the City, the County, and RW from entering into or executing any lease agreements pertaining to the property at issue until a final determination on the merits of the action.

¶17.   On April 7, 2021, the City passed Resolution 218-21.

¶18.   The chancery court granted, in part, the State's motion and ordered that no construction proceed on the property until final adjudication of rights by the chancery court. The chancery court denied the State's motion to restrain a vote by the Biloxi City Council but ordered that neither the State nor the City had the ability to convey a leasehold interest in the property to RW until final adjudication by the Court.

¶19.   On April 20, 2021, the City, the County, and RW[1] filed a motion to amend their answers to the complaint and to add a counterclaim.  RW sought to add a counterclaim for a declaratory judgment finding that the County had sole and absolute authority over the sand beach and that the City and County had the specific statutory authority to lease to RW a nonexclusive leasehold interest in the sand beach and submerged lands portions of the

---

[1]The City, the County, and RW made joint filings in the case, so references to RW's arguments necessarily incorporate the City and the County.

property at issue for the purpose of building and maintaining a municipal pier for public and private use.

¶20.    The trial court denied the State's motion for summary judgment and granted in part RW's motion to amend.  The trial court found that the Public Trust Tidelands Act did not clearly grant *sole* authority and *exclusive* rights to the Secretary of State to act on behalf of the State and other governing authorities to lease all purported Public Trust Tidelands without exception.  Further, the trial court found that insufficient evidence had been presented regarding the location of the mean high tide line to conclusively establish the rights of the parties.  The trial court also dissolved the temporary restraining order, stating that the parties may comply with the procedures set out in Mississippi Rule of Civil Procedure 65 to seek additional injunctive relief and allowed RW to add counterclaims.

¶21.    Thereafter, RW filed a motion for summary judgment and requested a declaratory judgment that the Legislature had delegated authority to the City and County to lease property to private parties without having to obtain a tidelands lease from the Secretary of State.  The State renewed its motion for summary judgment and again sought a declaratory judgment that the parties must first obtain a tidelands lease from the Secretary of State before constructing a pier on or subleasing the property at issue.

¶22.    The trial court denied the State's motion for summary judgment and granted RW's motion for summary judgment.  The trial court found that the "construction and lease of a pier at the foot of Veterans Avenue is in furtherance of the higher public purposes set forth

10

in the Ports and Harbors statutes[.]"[2]  It additionally found that the City and County had statutory authority under the Ports and Harbors statutes and the Seawall Act to lease the property to RW for public use.

¶23.    The State raises two issues on appeal: 1) whether RW is statutorily required to obtain a tidelands lease; and 2) whether the Secretary of State is estopped from requiring a tidelands lease.

## STANDARD OF REVIEW

¶24.    "Th[e] Court employs a *de novo* standard of review when considering a trial court's grant or denial of summary judgment." *Hobson v. Chase Home Fin., LLC*, 179 So. 3d 1026, 1033 (Miss. 2015) (citing *WW, Inc. v. Rainbow Casino-Vicksburg P'ship, L.P.*, 68 So. 3d 1290, 1292 (Miss. 2011)).  "Similarly, 'while the decision to grant [declaratory judgment] relief is discretionary, the judgment's conclusions of law are reviewed de novo on appeal.'" *Sledge v. Grenfell Sledge and Stevens, PLLC*, 263 So. 3d 655, 661 (Miss. 2018) (alteration in original) (quoting *Tellus Operating Grp., LLC v. Texas Petroleum Inv. Co.*, 105 So. 3d 274, 282-83 (Miss. 2012)).

## DISCUSSION

¶25.    After *de novo* review, we reach the same conclusion as the chancellor—no tidelands lease is required from the Secretary of State in order for the City and County to cause the pier to be constructed.

---

[2] Title 59 of the Mississippi Code is entitled Ports, Harbors, Landings and Watercraft, and includes Mississippi Code Sections 59-1-1 through 59-25-17 (Rev. 2022).

### I. Whether RW Development is statutorily required to obtain a tidelands lease.

¶26. As previously discussed, the chancellor found that the City and County have the specific statutory authority under the Ports and Harbors statutes, namely Mississippi Code Sections 59-15-1 and 59-7-405 (Rev. 2022), to reclaim, use, and lease the subject property to RW for public use. The chancellor further found that Mississippi Code Section 29-1-107 (Rev. 2020) and Mississippi Code Section 7-11-11 (Rev. 2019) are general statutes that must yield to the specific authority granted to the City and County and, consequently, it is not necessary for the City and County to have a separate lease from the State.

¶27. On appeal, the State argues that the Ports and Harbors statutes do not grant the City authority to independently lease the subject property without a tidelands lease. Rather, the State argues that any grant of authority by the legislature to municipalities to reclaim tidelands within their borders, and to lease the same, is subservient to the Secretary of State's leasing authority. We disagree.

¶28. The sand beach, roads, and seawalls that run parallel with the Gulf of Mexico in southern Harrison County are possessed of a long history of construction, erosion, and destruction by hurricanes. *See generally* ***United States v. Harrison Cnty., Miss.***, 399 F.2d 485, 486-90 (5th Cir. 1968). What matters today is that, following a hurricane in 1947, Harrison County worked in agreement with the federal government to rebuild seventeen miles of sand beach that had been destroyed in that storm. ***Id.*** at 488-90. The effort led to the December 22, 1950 act of the Harrison County Board of Supervisors, noted by the trial

judge in her opinion, assuming ownership of the beach construction and its administration for public use.

¶29.    We begin our analysis of the issue by discussing the relevant statutes. Mississippi Code Section 59-15-1 provides as follows:

> The authorities of any city in this state which has a population of ten thousand or more, according to the last official government census, and the authorities of any municipality bordering on the Mississippi Sound or Gulf of Mexico are hereby given the authority to acquire by purchase, deed, donation, gift, grant, reclamation, lease, dedication, or otherwise, land, harbor sites or water frontage for the purpose of establishing, developing, promoting, maintaining, and operating harbors for small water crafts and recreational parks connected therewith within its territorial limits, or both, and shall have the power to acquire, purchase, install, rent, lease, mortgage, incumber, construct, own, hold, maintain, equip, use, control and operate recreational parks and harbors for small water craft.

Miss. Code Ann. § 59-15-1 (Rev. 2022).

¶30.    There appears to be no dispute that the City meets the requirements of the above-quoted statute as a city authorized to acquire land, harbor sites, or water frontage.  The crux of today's matter is whether the City acquired the subject property.  The trial judge found that the City had acquired it because the above-quoted statute, as well as other statutes, confer a statutory right of reclamation. Indeed, Section 59-15-1 provides several means by which land may be acquired, of which reclamation is clearly one.

¶31.    The chancellor defined reclamation as "the process of bringing economically unusable land to a higher dollar value by physically changing it; *e.g.*, draining a swamp, irrigating desert, replanting a forest."  *Reclamation*, Black's Law Dictionary (6th ed. 1991).  The dictionary definition relied upon by the chancellor comports with the Court's usage of the

13

term in past cases.  *See, e.g.*, ***Carter v. Chuquatonchee Consol. Drainage Dist.***, 218 So. 2d 30, 32 (Miss. 1969); ***Treuting v. Bridge & Park Comm'n of Biloxi***, 199 So. 2d 627, 630 (Miss. 1967).  Two facts from the history of the pier and sand beach support the chancellor's finding that the County had acquired at area of the pier by reclamation.  First, as described above, the County, with federal assistance, reclaimed the sand beach following the 1947 hurricane.  Second, the Biloxi Port Commission, prior to its dissolution and conveying the pier to the city, built and maintained a pier at the site for decades without a lease from the Secretary of State's office.  By maintaining the pier and rebuilding the sand beach, the City and the County, respectively, reclaimed value from the land.  As the chancellor found, although no entity may acquire title to state-owned lands, the State may, through the Legislature, authorize the use of the lands.  It has done so here.

¶32.    The chancellor also relied on Mississippi Code Section 59-7-405(1)(a), which provides as follows:

> The governing authorities of any municipality in which there is situated and located, in whole or in part, a port or harbor through which commerce flows, and having not less than eight (8) industries engaged in the seafood industry, which maintains a channel and/or harbor to a depth of not less than eight (8) feet, may engage in, either directly or through the commission hereinafter provided and designated, and such other agencies as hereafter may be provided by law, works of internal improvement, or promoting, developing, constructing, maintaining and operating harbors or seaports within the state and its jurisdiction, and either directly or through the commission hereinafter provided for, with the power and authority to acquire, purchase, install, rent, lease, mortgage and/or otherwise encumber, to construct, own, hold, maintain, equip, use, control and operate at seaports or harbors, wharves, piers, docks, warehouses, cold storage facilities, water and rail terminals, airplane landing fields and strips, and other structures and facilities, needful for the convenient use of the same in the aid of commerce and navigation, and including the dredging of channels and approaches to the facilities, and being authorized to

14

fill in and reclaim bottomlands where incidental and necessary to the foregoing development.

Miss. Code Ann. § 59-7-405(1)(a) (Rev. 2022). There again appears from the record no dispute that the City is a municipality that fits the prerequisites of the statute. As such, the statute conveys the authority to directly or indirectly construct piers. Section 59-7-405(1)(a) purports to be a grant of authority to a limited subset of municipalities, and it contains no requirement that such a municipality first obtain a lease. Mississippi Code Section 59-7-405(5) (Rev. 2022) confirms that qualifying municipalities may provide small craft and pleasure craft facilities.

¶33. The State contends that the City's statutorily delegated authority must yield to Mississippi Code Sections 7-11-11 and 29-1-107. For the reasons cited by the chancellor, however, the State's reliance on the statutes is misplaced. Both of the statutes are general statutes. Section 7-11-11 provides as follows:

> The Secretary of State shall have charge of the swamp and the overflowed lands and indemnity lands in lieu thereof, the internal improvement lands, the lands forfeited to the state for nonpayment of taxes after the time allowed by law for redemption shall have expired, and of all other public lands belonging to or under the control of the state. The regulation, sale and disposition of all such lands shall be made through the secretary of state's office.

> The secretary of state shall sign all conveyances and leases of any and all state-owned lands and shall record same in a book kept in his office for such purposes.

Miss. Code Ann. § 7-11-11 (Rev. 2019). Nothing in Section 7-11-11 contradicts or runs afoul of the grants of authority to municipalities such as the City outlined above. The grants of authority to municipalities described above are specific grants of authority by the State,

and specific statutes govern over general statutes. ***Town v. Terry v. Smith***, 48 So. 3d 507, 510-11 (¶ 10) (Miss. 2010).

¶34. Section 29-1-107(1) empowers the Secretary of State, with the approval of the Governor, "to rent or lease all lands belonging to the state . . . ." Miss. Code Ann. § 29-1-107(1) (Rev. 2020). It further contains specific requirements applicable to the leasing of tidelands. Miss. Code Ann. § 29-1-4 107(2). However, Section 29-1-107(1) contains the phrase, "except otherwise provided by law," in which the statute acknowledges and makes room for other statutes such as Sections 59-15-1 and 59-7-405. Moreover, Section 29-1-107 contains no prohibitions against municipalities acquiring the authority to use state lands via other means, such as reclamation. Accordingly, there is no conflict between it and the statutes upon which the City and County rely. In other words, the State, without doubt, maintains control over the land, and exercises that control through the statutes in a way that allows the RW to rebuild the pier.

¶35. We hold that Sections 59-15-1 and 59-7-405 are sufficient to affirm the decision of the chancellor as to the City's authority to lease the subject property. Via the statutes, the State granted the City the necessary authority, without the necessity of obtaining a redundant second grant of authority from the Secretary of State in the form of a lease, to lease the subject property to RW for purposes of reconstructing the public pier located at the end of Veterans' Avenue. As the chancellor stated in her opinion, "[t]he statutory grant of use is, in effect, the lease."

## II. Estoppel

16

¶36. The chancellor further found that the State is estopped from now requiring a lease. The chancellor wrote as follows:

> The Court further finds that municipal piers and harbors have been constructed within the City for many decades without the requirement of a tidelands lease from the Secretary. Pursuant to specific statutory grants, cited herein, of the right to reclaim and use Tidelands, these piers and harbors have been constructed in furtherance of the higher public purposes of the Public Trust for Tidelands. The State has acquiesced for many decades in the use of these Tidelands for these higher public purposes without having or requiring a tidelands lease from the Secretary, and, accordingly, the State is estopped from asserting that a tidelands lease is now necessary to act in furtherance of the higher public purposes of the Trust. *See Bayview Land Ltd. v. State*, 950 So. 2d 966 (Miss. 2007).

¶37. As RW properly asserts, the State may be equitably estopped under the proper circumstances. *Bd. of Trs. of Monroe Cnty. Bd. of Educ. v. Rye*, 521 So. 2d 900, 908-09 (Miss. 1988) ("The State, its counties, subdivisions and municipalities may be equitably estopped under the proper circumstances." (citing *Suggs v. Town of Caledonia*, 470 So. 2d 1055 (Miss. 1985); *Covington Cnty. v. Page*, 456 So. 2d 739 (Miss. 1984); *State v. Stockett*, 249 So. 2d 388 (Miss. 1971))).

¶38. The three elements of equitable estoppel are as follows: "(1) Belief and reliance on some representation; (2) Change of position, as a result thereof; (3) Detriment or prejudice caused by the change of position." *Miss. Div. of Medicaid v. Yalobusha Cnty. Nursing Home*, 346 So. 3d 413, 426 (¶ 47) (Miss. 2022) (internal quotation marks omitted) (quoting *Suggs*, 470 So. 2d at 1057).

¶39. By allowing multiple piers and harbors to be built over the years without first obtaining a lease, the Secretary of State represented that no lease would be required for the

17

City to rebuild the pier in question here. RW changed its position by undertaking the expense and effort of planning and agreeing to rebuild. The change in position by the Secretary of State in now requiring a lease works to the detriment of RW by adding expense and delaying the process. RW argues in its brief that, because it is not being allowed to proceed, citizens—including handicapped citizens—are being denied the use of the pier, and efforts to promote tourism and economic development are frustrated. As such, all of the elements are satisfied for the application of equitable estoppel.

¶40. The State cites *Cinque Bambini Partnership v. State*, 491 So. 2d 508 (Miss. 1986), for the proposition that it cannot be equitably estopped from exercising dominion over public lands. In *Cinque Bambini*, however, a private party brought an action to quiet title and establish actual title and ownership of the state-owned land in question. *Id.* at 511. In the instant case, RW has not and does not contest State ownership. The issue is not whether the City owns title to the land, but whether it may rebuild a pier. The chancellor's application of equitable estoppel was, therefore, proper.

## CONCLUSION

¶41. Mississippi statutory law grants Biloxi the authority to rebuild the pier. Also, the State's lengthy representation that such construction would be allowed without a lease results in the State's being estopped from requiring one here. Accordingly, we affirm the judgment of the chancery court.

¶42. **AFFIRMED.**

18

**RANDOLPH, C.J., MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J., AND GRIFFIS, J.**

**KING, PRESIDING JUSTICE, DISSENTING:**

¶43. Because the State maintains its right to demand a tidelands lease before RW Development, LLC, builds a pier on State-owned tidelands, I respectfully dissent.

### A. Statutory Interpretation

¶44. Statutes must be applied according to their plain meaning when the terms are not ambiguous. *State ex rel. Hood v. Madison Cnty. ex rel. Madison Cnty. Bd. of Supervisors*, 873 So. 2d 85, 90 (Miss. 2004). When two statutes deal with the same subject matter, they must be read in pari materia. *Id.* Thus, "they must be read together in light of legislative intent." *Tunica Cnty. v. Hampton Co. Nat. Sur., LLC*, 27 So. 3d 1128, 1133 (Miss. 2009) (internal quotation mark omitted) (quoting *Lenoir v. Madison Cnty.*, 641 So. 2d 1124, 1129 (Miss. 1994)). Such statutes "should if possible be construed in harmony with each other to give effect to each." *Id.* at 1134 (internal quotation mark omitted) (quoting *Miss. Gaming Comm'n v. Imperial Palace of Miss.*, 751 So. 2d 1025, 1029 (Miss. 1999)). Specific statutes control over general statutes, but this rule only applies "when statutes are irreconcilably inconsistent." *Madison Cnty.*, 873 So. 2d at 91. The majority claims that specific statutes control over allegedly general statutes without any finding that the statutes were inconsistent (and indeed, it finds no conflict between the statutes), and without any attempt to analyze them in harmony with each other. Maj. Op. ¶ 34.

#### 1. RW Development I

¶45.    ***RW Development, LLC v. Miss. Gaming Comm'n (RW Development I)*** involved a gaming site that is distinct from the property at issue, but much of the arguments centered on the nature of land adjacent to the gaming site.  ***RW Dev., LLC v. Miss. Gaming Comm'n (RW Dev. I)***, 307 So. 3d 404 (Miss. 2020).  The State claims that the adjacent land in ***RW Development I*** overlaps with the property in question in this case.  Namely, the State claims that the tidelands portion of the adjacent land in ***RW Development I*** is largely encompassed in the tidelands portion of the property to be leased. The record indicates that the adjacent tidelands referenced in ***RW Development I*** significantly overlap with the property to be leased.[3]

¶46.    ***RW Development I*** dealt with multiple issues across multiple Gaming Commission cases.  Generally, and relevant to this case, the Mississippi Gaming Commission (MGC), found that 1) RW failed to prove that its proposed site was within eight hundred feet of the mean high water line, and 2) RW failed to show that it owned or leased the property to the shore and failed to show how that property would be an integral part of the overall project.  ***RW Dev. I***, 307 So. 3d at 407-08.

¶47.    RW argued that the sand beach was a public easement, relying on ***United States v. Harrison County***, 399 F.2d 485 (5th Cir. 1968).  ***RW Dev. I***, 307 So. 3d at 414.  This Court found RW's argument unclear, but posited that "[p]erhaps RW labels the sand beach as a 'public easement' in an attempt to exclude the beach from being counted" because statutory

---

[3]The State argues that the City, the County, and RW are trying to circumvent the Mississippi Gaming Commission's prior decisions with this lease.  Notably, the regulation that RW was found not to meet in ***RW Development I*** and RW's option with the city both contain the "integral part" language.

20

law exempted easements and rights of way for public streets and highways from being counted for the eight-hundred-feet requirement. *Id.* The Court noted that "*Harrison County* supports the fact that the sand beach is not an easement; rather, it is owned by the state of Mississippi." *RW Dev. I*, 307 So. 3d at 414.

¶48. RW then argued that its littoral rights to the adjacent sand beach allowed it to satisfy the requirement that it owned or leased the property to the shore. *Id.* at 419. The Court found that littoral rights are merely licenses or privileges and do not allow RW to claim "co-owner" status to the sand beach. *Id.* (internal quotation marks omitted). It further reaffirmed that "the sand beach is owned by the state of Mississippi and that the Mississippi Constitution forbids any donation of state-owned land to private entities." *Id.* (citing *Harrison Cnty.*, 399 F.2d 485). The Court opined that "RW could have attempted to obtain a public tidelands lease from the secretary of state for the sand beach area if it had a basis for such a lease, but it did not." *Id.* at 419-20 (citing *Columbia Land Dev., LLC v. Sec'y of State*, 868 So. 2d 1006, 1013 (Miss. 2004)).

¶49. Thus, as the land at issue overlaps with the sand beaches mentioned in *RW Development I*, it, while not directly addressing the issue at hand, is nonetheless persuasive authority that the State has a right to demand a tidelands lease from RW.

## 2. *City Authority to Lease Tidelands to a Private Party*

¶50. RW argues that the City has authority over the property via Mississippi Code Section 59-15-1 and Mississippi Code Section 59-7-405, and by virtue of being a subdivision of the State. The majority agrees with RW and the chancery court that these statutes allow the City

21

to acquire the property and the right to lease it to a private party, without the authority of the Secretary of State, via reclamation.

¶51. But Section 59-15-1 only grants cities the "authority to *acquire* by purchase, deed, donation, gift, grant, reclamation, *lease*, dedication, or otherwise, land harbor sites or water frontage for the purposes of establishing, developing, promoting, maintaining, and operating harbors for small water crafts and recreational parks . . . ." Miss. Code Ann. § 59-15-1 (Rev. 2022) (emphasis added). Thus, one manner under which the city would be authorized to acquire such land when it is *tideland* would be via a lease from the Secretary of State. It could potentially acquire non-tidelands via reclamation under the statute. Municipalities then "shall have the power to acquire, purchase, install, rent, lease, mortgage, incumber, construct, own, hold, maintain, equip, use, control and operate recreational parks and harbors for small water craft." *Id.* The second authorization appears to apply when the underlying land has already been acquired by the municipality. Even if the two separate provisions of this statutory section are read as ambiguous, they must still be read in pari materia with the Public Tidelands Act, as described below.

¶52. Section 59-7-405 only allows certain municipalities to "engage in . . . works of internal improvement, or promoting, developing, constructing, maintaining and operating harbors or seaports within the state and its jurisdiction . . . ." Miss. Code Ann. § 59-7-405(1)(a) (Rev. 2022). Within that allowance is

> the power and authority to acquire, purchase, install, rent, lease, mortgage and/or otherwise encumber, to construct, own, hold, maintain, equip, use, control and operate at seaports or harbors, wharves, piers, docks, warehouses, cold storage facilities, water and rail terminals, airplane landing fields and

22

strips, and other structures and facilities, needful for the convenient use of the same in the aid of commerce and navigation . . . .

*Id.*

¶53. Based on its plain language, this statute only gives municipalities the authority to construct and own buildings and specific structures surrounding harbors and seaports. They may use the land to such purpose, but the statute does not grant them ownership or a leasehold over any tidelands incidentally used. And this Court need not determine if municipalities need a tidelands lease to construct or own such structures in this case, because that is not at issue—notably, the City in this case is not simply building a pier or contracting with a private party for that party to build a pier, it is leasing the *underlying and surrounding land* to a private party. Whether the option agreement between the City and RW would be valid if it *only* involved the building and/or leasing solely of the pier structure is *not* what is before this Court. We do not need to decide whether the building of the pier at RW's expense is akin to the City contracting out building a pier, and whether it has the authority to do so absent a tidelands lease. Because, inextricably entwined with the building and leasing of the pier structure in this situation is the additional lease to RW of the tidelands underlying and surrounding the pier. Thus, this statute does not appear to grant the City the authority to lease the underlying tidelands to RW absent a lease from the Secretary of State.

¶54. The Public Tidelands Act was enacted with the purpose "to resolve the uncertainty and disputes which have arisen as to the location of the boundary between the state's public trust tidelands and the upland property . . . ." Miss. Code Ann. § 29-15-3(2) (Rev. 2020). It further "favor[s] the preservation of the natural state of the public trust tidelands and their

23

ecosystems and . . . prevent[s] the despoliation of them, except where a specific alteration of specific public trust tidelands would serve a higher public interest . . . ." Miss. Code Ann. § 29-15-3(1) (Rev. 2020). The Public Tidelands Act addressed potential uses of the tidelands, *including reclamation*, by governmental entities by providing that

> [a]ll public projects of any federal, state or local government entity which serve a higher public purpose of promoting the conservation, *reclamation*, preservation of the tidelands and submerged lands, public use for fishing, recreation or navigation, or the enhancement of public access to such lands *shall* be exempt from any use or rental fees.

Miss. Code Ann. § 29-15-13 (Rev. 2020) (emphasis added). Thus, contrary to the chancery court's determination that reclamation essentially granted the city and county a lease over the subject property, when Mississippi Code Section 29-15-13 and Mississippi Code Section 29-1-107(2) (Rev. 2020), which grants the Secretary of State leasing authority over tidelands, are read together, reclamation does not grant a government entity a leasehold interest in the property. Rather, it specifically grants them only a right to be exempt from rental fees in its lease from the Secretary of State if the Secretary of State finds that the lease would fit within the public interests surrounding the tidelands.

¶55. RW also filed a Rule 28(k) letter citing this Court's recent opinion in *State ex rel. Watson v. Long Beach Harbor Resort, LLC*, 346 So. 3d 406 (Miss. 2022), but that case is inapposite as it hinged on a tidelands lease between the State and governmental entity that specifically authorized the sublease at issue. Further, RW argues that the phrase in Mississippi Code Section 29-1-107(1) "except as otherwise provided by law" refers to the other statutes it maintains authorize the City and County to obtain rights to lease tidelands.

24

RW takes that phrase completely out of context. Section 29-1-107(1) authorizes the Secretary of State to rent or lease public lands "belonging to the state, except as otherwise provided by law for a period of not exceeding one (1) year, and account for the rents therefrom . . . ." Miss. Code Ann. § 29-1-107(1) (Rev. 2020). The "except as otherwise provided by law" clearly refers to the one year time limit on leases, and not to anything else. This is reinforced by Section 29-1-107(2)(a), which provides that tidelands specifically may be leased "for a period not exceeding forty (40) years . . . ." Miss. Code Ann. § 29-1-107(2)(a) (Rev. 2020).

¶56.    Thus, reading all the statutes together, they do not irrevocably conflict, and the rights granted to municipalities do not automatically grant them a leasehold in tideland properties with the full rights to sublease such properties to private parties. The Secretary of State therefore had the authority to demand that RW obtain a tidelands lease in this situation that goes beyond mere pier construction, and the City was without authority to unilaterally lease the State's tideland property to RW.

### 3.    *County Authority to Lease Tidelands to a Private Party*

¶57.   The County argues and the majority finds that Mississippi Code Section 65-33-1 (Rev. 2021), which authorizes counties to protect roads near tidelands, gives the county a lease via reclamation over the subject property, and the County also argues that it has an easement over the subject property. But Section 65-33-1 only grants the County the right and duty to erect and maintain various protections for public roads adjacent to the water. Miss. Code Ann. § 65-33-1 (Rev. 2021). Similar to the statutes regarding municipalities, this specific

25

grant of authority to erect and maintain specific structures that may or may not lie on tidelands does not grant the County a leasehold or ownership interest over the property, by reclamation or otherwise.

¶58. The majority also indicates that the county has an easement over the property by virtue of *Harrison County*. But *Harrison County* was a contract dispute between the County and the United States. *Harrison Cnty.*, 399 F.2d at 486, 491. The United States Court of Appeals for the Fifth Circuit repeatedly noted that the State owned the tidelands at issue, and simply noted that the Legislature had made a general grant of authority to Harrison County to complete the project with the federal government and maintain the resulting beaches as public beaches. *Id. passim*; *RW Dev. I*, 307 So. 3d at 414-15. Indeed, the Fifth Circuit, in reviewing Harrison County's authority to contract and act on the contract regarding the subject property, referred to the legislative act granting Harrison County authority as "a grant directly from the owner of the property." *Harrison Cnty.*, 399 F.2d at 489. Nothing in federal or state law grants Harrison County an unfettered easement over the entirety of the property at issue. In any event, an easement owner cannot take dominant possession of the land on which the easement exists. *Rowell v. Turnage*, 618 So. 2d 81, 85 (Miss. 1993). Thus, the County likewise did not possess the authority to lease tidelands to RW absent a lease from the Secretary of State.

### B. Estoppel

¶59. The majority claims that the State is estopped from seeking a tidelands lease because it has not required tidelands leases to construct piers in the past. The State's delay in

26

asserting dominion over tidelands does not generally give rise to an estoppel. ***Cinque Bambini P'ship v. State***, 491 So. 2d 508, 521 (Miss. 1986). "The State's title may not be lost via adverse possession, limitations or laches. Under no circumstances may title held by the State for the public use or benefit be so lost." ***Id.*** (citations omitted). Regardless, such a finding narrows the issue to one not before this Court. Whether the State has acquiesced to municipalities, counties, and littoral rights holders constructing piers on tidelands without a tidelands lease is of no consequence to this case because this case is not about the simple construction of a pier—it also grants RW a leasehold in the underlying and surrounding tidelands themselves, it does not simply involve the structures. The State has not appeared to acquiesce to cities and counties leasing the underlying tidelands to a private party. Indeed, RW does not even argue that the State has acquiesced to parties unilaterally claiming leasehold interests in tideland property. This argument is consequently without merit.

¶60. The State has held title to tidelands for hundreds of years. None of the grants of specific authorities to municipalities and counties grant those entities a right to lease State property consisting of tidelands to a private entity. The State in this case had a right to demand that RW obtain a tidelands lease. The City and County had no authority to grant a lease to RW for the underlying State-owned tidelands in this case. The judgment of the chancery court should therefore be reversed; consequently, I dissent.

**KITCHENS, P.J., AND GRIFFIS, J., JOIN THIS OPINION.**